**UNITED STATES of America**

v.

**Gulzar KHAN, Defendant.**

**No. 91–CR–666 (ERK).**

United States District Court, E.D. New York,

Oct. 4, 1991.

Peter Kirchheimer, Brooklyn, N.Y., for defendant.

Jonathan S. Sack, Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

MEMORANDUM

KORMAN, District Judge.

The enactment and successive broadening of the Federal Magistrates Act (the "Act"), now comprising 28 U.S.C. §§ 631–39, 604, 1915 and 18 U.S.C. §§ 3401–3402, 3060, reflects the ongoing efforts of Congress to enlarge the role of the United States magistrate judge "to the end that the district court judge could have more time to preside at the trial of cases." H.R.Rep. No. 1609, 94th Cong., 2d Sess. 6, *reprinted in* U.S.Code Cong. & Admin.News 6162, 6166 (1976). The question here presented is whether, within the confines of Article III restrictions and within the bounds of a fair reading of the Act, the taking of a guilty plea may be placed within the panoply of duties properly discharged by a United States magistrate judge.

The issue is of particular consequence because of the rapidly exploding criminal case load and because taking a guilty plea is a time consuming exercise. In the first eight months of this year 1,254 defendants were charged by indictment or information in the Eastern District of New York. At this pace almost 1700 defendants will be charged this year. Of these, 1,400 defendants are likely to plead guilty in a proceeding that takes anywhere from twenty to forty-five minutes.[1]

Aside from the time it takes from an equally burgeoning trial calendar, it is frequently necessary to interrupt a trial or shorten a trial day in order to accommodate defendants who desire to plead guilty. Indeed, this is precisely the circumstance that gave rise to the assignment in this case. On July 11, 1991, the defendant's pretrial motion to withdraw his previously entered plea of guilty was scheduled to be heard. Because the allocution pursuant to Fed. R.Crim.P. 11 would have interrupted a lengthy ongoing criminal trial, the defendant and the United States Attorney consented to allowing Chief Magistrate Judge Chrein to conduct the allocution.

The reference to the Chief Magistrate was conditioned on my subsequent review of the transcript of the proceedings to ensure that the plea was knowingly and voluntarily made and that it had been taken in compliance with Fed.R.Crim.P. 11. Of course, pursuant to Fed.R.Crim.P. 32(d), which permits a defendant to withdraw a guilty plea prior to sentence "upon a showing by the defendant of any fair or just reason," a defendant could obtain such review of the plea allocution as a matter of right. Moreover, although the United States Attorney does not enjoy such a comparable formal vehicle for correcting a deficiency in the plea prior to sentencing, there is no rule that precludes him from asking a district judge to cure any error in the plea allocution prior to sentence.

While the United States Attorney agreed to the reference here, he has declined in subsequent cases to consent to the referral of the defendant's motion to plead guilty to a United States magistrate judge. Citing certain unarticulated concerns regarding the issue whether such a reference may be properly be made, he fears that guilty pleas referred to United States magistrate judges will be subject to subsequent challenge. Accordingly, although the United States Attorney does not object to the entry of a judgment of conviction here, I have undertaken to address the issues whether a defendant's pretrial application to enter a guilty plea may be referred to a United States magistrate judge and whether the consent of the United States Attorney is required for such a referral.

## DISCUSSION

In 1968, Congress first replaced the former office of the United States commissioner with the newly formed federal magistrates system. Federal Magistrates Act of 1968, Pub.L. No. 90–578, 82 Stat. 1107, *codified as amended at* 18 U.S.C. §§ 3401–3402; 28 U.S.C. §§ 631–39 (1988). Congress conferred on magistrates not only all powers formerly exercised by commissioners, it also conferred on magistrates the power to try minor offenses when all parties consent, and to perform such additional duties assigned by the district court as are "not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). The "additional duties" could include, but were not restricted to

(1) service as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts;

(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

(3) preliminary review of applications for post-trial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing.

28 U.S.C. § 636(b)(1) and (2).

---

1. In year ending June 30, 1990, 1,274 defendants were charged by indictment or information in the Eastern District of New York. Of these, 1,040, or almost 82% pled guilty. Administrative Office of the United States Courts, Annual Report 204 (1990).

The enactment of former Section 636(b) reflected the intent of Congress to enlarge significantly—indeed, dramatically—the function of the judicial officers serving directly below the level of the district court so as to ease the latter's overwhelming caseload. In particular, Congress sought to permit the district judges "to devote more of their time to dispositive adjudications." *United States v. Diaz*, 922 F.2d 998, 1004 (2d Cir.1990). Congress also intended to raise the standards of the judicial officers serving as magistrate judges. *See United States v. Raddatz*, 447 U.S. 667, 685–86, 100 S.Ct. 2406, 2417, 65 L.Ed.2d 424 (1980) (Blackmun, J., concurring) ("It is also significant that the Magistrates Act imposes significant requirements to ensure competency and impartiality, including a rule generally barring reduction of salaries of full-time magistrates.") (citations omitted).

The experience under former section 636(b) demonstrated that magistrates were fulfilling their intended function of assisting "the district judge to the end that the district court judge could have more time to preside at the trial of cases," H.R.Rep. No. 1609, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6166. Congress was disturbed, however, by a series of cases that construed former Section 636 in a manner that limited the "additional duties" that could be conferred on magistrates. *See e.g. Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1975); *TPO v. McMillan*, 460 F.2d 348 (7th Cir.1972); *Ingram v. Richardson*, 471 F.2d 1268 (6th Cir.1972). Accordingly, former Section 636(b) was rewritten in 1976 to restate and clarify "the Congressional intention that the magistrate should be a judicial officer who, not only in his own right but also under general supervision of the court, shall serve as an officer of the court in disposing of minor and petty criminal offenses, in the preliminary or pretrial processing of both criminal and civil cases, and in hearing dispositive motions and evidentiary hearings when assigned to the magistrate by a judge of the court." H.R.Rep. No. 1609, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6165.

Section 636(b), as amended in 1976, authorized district court judges to delegate judicial duties to magistrates under four separate lines of authority set forth in 28 U.S.C. § 636(b), of which three merit discussion here. First, it authorized a judge to designate a magistrate to "hear and determine *any* pretrial matter pending before the court," except for eight enumerated classes of motions that are viewed as effectively dispositive of the case. *Id.* at § 636(b)(1)(A) (emphasis supplied). Second, a district judge is authorized to designate a magistrate "to conduct hearings, including evidentiary hearings, and to submit ... proposed findings of fact and recommendations for the disposition by a judge of the court," of any of the eight categories of excepted dispositive motions and of "applications for post-trial relief made by individuals convicted of criminal offenses and prisoner petitions." 28 U.S.C. § 636(b)(1)(B). Third, in addition to the specifically enumerated duties set forth in section 636, a district court judge is authorized to refer to a magistrate any "additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). The Senate Judiciary Committee's report emphasized the expansive nature of this "catch-all" provision.

A similar provision is contained in the existing legislation. This subsection enables the district courts to continue innovative experimentations in the use of this judicial officer. At the same time, placing this authorization in an entirely separate subsection emphasizes that it is not restricted in any way by any other specific grant of authority to magistrates.

. . . . .

If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties, and a consequent benefit to both efficiency and the quality of justice in the Federal courts.

S.Rep. No. 625, 94th Cong., 2d Sess. 10–11 (1976).

The House Judiciary Committee Report reflected a similar expression of intent:

Under this subsection, the district courts would remain free to experiment in the assignment of other duties to magistrates which may not necessarily be included in the broad category of "pretrial matters." This subsection would permit, for example, a magistrate to review default judgments, order the exoneration or forfeiture of bonds in criminal cases, and accept returns of jury verdicts where the trial judge is unavailable.

H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12, *reprinted in*, 1976 U.S.Code Cong. & Admin.News 6172.

Moreover, the Senate Judiciary Committee stated that section 636(b) should be read broadly enough to permit magistrates to perform judicial duties under existing statutes and rules that refer specifically to a "judge" or a "court."

The initial sentence of the revised section uses the phrase "notwithstanding any provision of law to the contrary—". This language is intended to overcome any problem which may be caused by the fact that scattered throughout the code are statutes which refer to "the judge" or "the court." It is not feasible for the Congress to change each of those terms to read "the judge or a magistrate." It is, therefore, intended that the permissible assignment of additional duties to a magistrate shall be governed by the revised section 636(b), "notwithstanding any provision of law" referring to "judge" or "court."

S.Rep. No. 625, 94th Cong., 2d Sess. 7.

This expansive expression of congressional intent is echoed in a number of subsequent Supreme Court decisions. Most recent among these is *Peretz v. United States*, — U.S. —, 111 S.Ct. 2661, 2671, 115 L.Ed.2d 808 (1991), in which it was held that "permitting a magistrate to conduct the *voir dire* in a felony trial when the defendant raises no objection is entirely faithful to the congressional purpose in enacting and amending the Federal Magistrates Act." The Court added:

The generality of the category of "additional duties" indicates that Congress intended to give federal judges significant leeway to experiment with possible improvements in the efficiency of the judicial process that had not already been tried or even foreseen. If Congress had intended strictly to limit these additional duties to functions considered in the committee hearings or debates, presumably it would have included in the statute a bill of particulars rather than a broad residuary clause.

*Id.* 111 S.Ct. at 2667. *See also United States v. Raddatz*, 447 U.S. 667, 675, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980); *Mathews v. Weber*, 423 U.S. 261, 267–70, 96 S.Ct. 549, 552, 46 L.Ed.2d 483 (1976).

The consent of the defendant in *Peretz* to the referral of the *voir dire* obviated concerns that had led the Supreme Court to hold in *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), that the Federal Magistrates Act does not permit referral of a felony *voir dire* over a defendant's objections. *Gomez* adhered to the "settled policy [of] avoid[ing] an interpretation of a federal statute that engenders constitutional issues." *Gomez*, 490 U.S. at 864, 109 S.Ct. at 2441. A contrary interpretation of the Act in *Gomez* would have raised the "substantial question whether a defendant has a constitutional right to demand that an Article III judge preside at every critical stage of a felony trial." *Peretz*, 111 S.Ct. at 2665. The *Gomez* majority had demanded, accordingly, that Congress express its intent clearly, "because the Government was asking [the Court] to construe a general grant of authority to authorize a procedure that deprived an individual of an important privilege, if not a right." *Id.* 111 S.Ct. at 2666.

The defendant's consent in *Peretz* persuaded the court to reach a very different conclusion in that case.

Most notably, the defendant's consent significantly changes the constitutional analysis.... [W]e have no trouble concluding that there is no Article III problem when a district court judge permits a magistrate to conduct *voir dire* in accordance with the defendant's consent. The absence of any constitutional difficulty removes one concern that motivated us in *Gomez* to require unambiguous evidence of Congress' intent to include

jury selection among a magistrate's additional duties. Petitioner's consent also eliminates our concern that a general authorization should not lightly be read to deprive a defendant of any important privilege.

. . . . .

Of course, we would still be reluctant, as we were in *Gomez*, to construe the additional duties clause to include responsibilities of far greater importance than the specified duties assigned to magistrates. But the litigants' consent makes the crucial difference on this score as well.... [T]he duties that a magistrate may perform over the parties' objections are generally subsidiary matters not comparable to supervision of jury selection. However, with the parties' consent, a district judge may delegate to a magistrate supervision of entire civil and misdemeanor trials. These duties are comparable in responsibility and importance to presiding over *voir dire* at a felony trial.

*Id.* 111 S.Ct. at 2667.

The language and legislative history of section 636 suggest that the taking of a guilty plea upon the consent of the defendant, like the jury *voir dire* in *Peretz*, is within the scope of duties that may be delegated under the "additional duties" clause. A plea of guilty is a shorthand way of describing a motion by a defendant to be permitted to plead guilty. When made before trial, which is when most such motions are made, it fits literally within the language of section 636(b)(1)(A) that permits the delegation of "any pretrial matter pending before the court" to a magistrate "to hear and determine." 28 U.S.C. § 636(b)(1)(A). *Cf. United States v. Rojas*, 898 F.2d 40, 42 (5th Cir.1990) ("The voluntariness of the plea was obviously a pretrial matter and as such could be referred to a magistrate.")

The nature of the guilty plea, however, suggests that the "pretrial matters" clause does not provide the appropriate source for the reference to the magistrate judge.

Once such a motion is granted, it resolves the central issue in the case, and all that remains is the entry of a judgment of conviction. Under such circumstances, the determination whether to accept such a plea should be subject to *de novo* review by the district court judge rather than to the more limited review afforded by the "clearly erroneous or contrary to law" standard.[2]

While a motion to plead guilty is akin to a dispositive pretrial motion, it is not one of the enumerated dispositive motions that may be referred pursuant to 28 U.S.C. § 636(b)(1)(B). Nevertheless, a motion to plead guilty differs from other dispositive motions in a way that clearly suggests that the referral of such a motion may be made to a United States magistrate judge pursuant to the "additional duties" clause. In taking a guilty plea, a judicial officer is not, in large measure, performing an adjudicatory function. The defendant's guilt or innocence is not being contested. The defendant desires to plead guilty, normally pursuant to an agreement entered into with the United States Attorney and, even when no such agreement has been made, the United States Attorney has no standing to object to an unconditional plea of guilty.

Although the judicial officer must be sensitive to indications that the defendant may be coerced or confused, the judicial officer is not required to resolve any active controversy. The defendant confesses his crime to the judicial officer, generally with the advice and oversight of an attorney, and the judicial officer works largely to ensure that the defendant understands his rights and that the defendant waives them knowingly and freely by his plea. *McCarthy v. United States*, 394 U.S. 459, 465–66, 89 S.Ct. 1166, 4170–71, 22 L.Ed.2d 418 (1964). The discharge of such a duty is not of "far greater importance" than the specified duties assigned to magistrates. *Peretz v. United States*, 111 S.Ct. at 2667.

Particularly apposite here is *United States v. Rojas*, 898 F.2d 40 (5th Cir.1990), which addressed the issue of the reference to a magistrate of a contested pre-sentence motion by a defendant to withdraw his plea

---

**2.** The ruling of the magistrate in matters referred "to hear and determine" may be reconsidered by the district court judge only "if clearly

erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

of guilty on the ground that it was not voluntarily made. In rejecting the defendant's objection to the reference, the Court of Appeals held:

> Even if we accept Rojas' contention that determining the voluntariness of a plea is so critical a stage in a criminal proceeding that it must be done by a judge, there was no unauthorized action here. The magistrate in this case did not "determine" the matter but only made a recommendation and findings of fact. The final decision whether to accept the recommendation was made by the district judge, after he had both heard Rojas' own arguments and reviewed the magistrate's findings of fact. Thus even if the determination of the voluntariness of a plea is so important that it should be considered analogous to those issues specifically exempted from a magistrate's authority in section 636(b)(1)(A), the magistrate here exercised no greater authority than she could have for issues specifically exempted, i.e., making a recommendation.

898 F.2d at 42.

Moreover, the Federal Magistrates Act expressly permits the magistrate to play a role in the resolution of issues in contested proceedings that is arguably of more significance than the role played by magistrates in the administration of the Rule 11 allocution. The Act expressly permits the referral of suppression hearings in which a defendant challenges the voluntariness of confession. 28 U.S.C. § 636(b)(1)(B); *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). More importantly, a judge may refer to a magistrate post conviction motions—"prisoner petitions," 28 U.S.C. § 636(b)(1)(B)—which frequently challenge the voluntariness of a guilty plea. Surely, if a magistrate may be

authorized to make an after-the-fact finding resolving the issue whether a defendant knowingly and voluntarily pled guilty, such a judicial officer may be authorized to make a similar finding resolving the issue whether a defendant is knowingly and voluntarily pleading guilty in an uncontested proceeding.[3] Indeed, the task of taking guilty pleas is one that magistrates regularly perform in misdemeanor cases where the defendant has agreed in writing to be tried before the magistrate. Fed.R.Crim.P. 58(b)(3)(A).

Under these circumstances, it does no violence to the legislative scheme to construe the "additional duties" clause of section 636(b)(3) to include the taking of a guilty plea. Nor is the assignment of such a duty to a magistrate precluded by the language of Fed.R.Crim.P. 11(c) that requires "the court" to administer personally the prescribed allocution.[4] Fed.R.Crim.P. 24, which deals with jury selection, has similar language, yet the Supreme Court in *Peretz* found no impediment to the delegation of jury selection to a magistrate. *See* 111 S.Ct. at 2667–68. Similarly, Fed. R.Crim.P. 31 expressly provides that a jury verdict shall be returned to "the judge" in open court, and Fed.R.Crim.P. 25 provides that if a judge becomes disabled during the course of a trial "any other judge regularly sitting in or assigned to the court ... may proceed with and finish the trial." This language notwithstanding, the House Judiciary Committee expressly suggested that the "additional duties clause would permit magistrates to accept returns of jury verdicts where the trial judge is unavailable." H.R.Rep. No. 1609, 94th Cong. 2d Sess. 12, *reprinted in,* 1976 U.S.Code Cong. & Admin.News 6172. Indeed, it seems clear from the legislative history that, as a general matter, Congress did not intend the

---

**3.** This role is also somewhat similar to that played by a magistrate when, as specifically suggested by the House Committee Report cited above, he or she "accept[s] returns of jury verdicts where the trial judge is unavailable." H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6172. When accepting a jury verdict, the judicial officer polls the jury to ensure that the verdict represents the intended and uncoerced verdict of each juror.

**4.** The requirement that "the court" address the defendant personally was added in a 1966 amendment to Rule 11 and was intended to resolve "some confusion over this matter" in the case law. Fed.R.Crim.P. 11 advisory committee's note. The cases cited by the Advisory Committee as supporting inquiry by "the court" appear to be concerned with having the advice administered on the record as opposed to relying on defense counsel to perform the task. *See e.g., United States v. Diggs,* 304 F.2d 929, 930

use of the word "judge" or "court" in various rules and statutes that vest certain responsibilities in judges to preclude the delegation of the particular responsibility to a magistrate. *See* S.Rep. No. 625, 94th Cong., 2d Sess 7; *In re Grand Jury Appearance of Cummings*, 615 F.Supp. 68, 71 (D.C.Wis.1985).

The principal remaining issue is whether this delegation offends the restrictions of Article III of the Constitution. The recent Supreme Court decisions cited above broadly support the constitutionality of consensual delegations to magistrate judges. Among these, *Peretz* is perhaps the most direct in its plain conclusion that "[t]here is no constitutional infirmity in the delegation of felony trial jury selection to a magistrate when the litigants consent." *Peretz*, 111 S.Ct. at 2669. The *Peretz* Court held not only that the personal protections of Article III may be waived, but also that such delegation does not trigger Article III's structural guarantees, which are not subject to waiver.

We have previously held that litigants may waive their personal right to have an Article III judge preside over a civil trial. The most basic rights of criminal defendants are similarly subject to waiver. Just as the Constitution affords no protection to a defendant who waives these fundamental rights, so it gives no assistance to a defendant who fails to demand the presence of an Article III judge at the selection of his jury.

Even assuming that a litigant may not waive structural protections provided by Article III, we are convinced that no such structural protections are implicated by the procedure followed in this case. Magistrates are appointed and subject to removal by Article III judges. The "ultimate decision" whether to invoke the magistrate's assistance is made by the district court, subject to veto by the parties. *See United States v. Raddatz*, 447 U.S. 667, 683 [100 S.Ct. 2406, 2416, 65

L.Ed.2d 424] (1980). The decision whether to empanel the jury the selection of which a magistrate has supervised also remains entirely with the district court. Because "the entire process takes place under the district court's total control and jurisdiction," *id.*, at 681, there is no danger that use of the magistrate involves a "congressional attemp[t] 'to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating' constitutional courts, *National Insurance Co. v. Tidewater Co.*, 337 U.S. 582, 644 [69 S.Ct. 1173, 1209, 93 L.Ed. 1556] (1949) (Vinson, C.J., dissenting). . . ." *Commodity Futures Trading Commission v. Schor*, 478 U.S. [833] at 850 [106 S.Ct. 3245, 3256, 92 L.Ed.2d 675 (1986)].

*Peretz*, 111 S.Ct. at 2669–70 (citations omitted).

Of comparable significance is the holding in *United States v. Raddatz*, 447 U.S. 667, 674–76, 100 S.Ct. 2406, 2411–12, 65 L.Ed.2d 424 (1980). In *Raddatz*, the Supreme Court reviewed the referral to a magistrate, over the defendant's objections, of the defendant's motion to suppress certain incriminating statements made by the defendant. In his recommendation, which was subject to *de novo* review, the magistrate rejected the defendant's argument that the statements were made involuntarily. The Supreme Court upheld the referral and declared that "although the statute permits the district court to give to the magistrate's proposed findings of fact and recommendations 'such weight as [their] merit commands and the sound discretion of the judge warrants,' that delegation does not violate Art. III so long as the ultimate decision is made by the district court." *Id.* at 683, 100 S.Ct. at 2416 (citations omitted).[5]

In the present case, the difficulties regarding review of a magistrate's conduct or findings such as those raised by the *Peretz* dissent, *see* 111 S.Ct. at 2677 (Mar-

(6th Cir.1962). These and other considerations that weigh in favor of a judge administering the allocution, *see McCarthy*, 394 U.S. at 465–66, are not undermined when the allocution is administered by a magistrate judge.

**5.** The Supreme Court also rejected the defendant's claim that the referral of the suppression

hearing violated the Due Process Clause. *Id.* 447 U.S. at 677–81, 100 S.Ct. at 2413–15. Similarly, the Due Process Clause would not likely preclude administration of the Rule 11 allocution by a magistrate over the defendant's objection. The defendant's consent in this case obviates the need to address the due process issue here.

shall, J., dissenting), or by the *Gomez* majority, *see Gomez*, 490 U.S., at 873–75, 109 S.Ct. at 2446–47, are almost entirely absent. In reviewing a plea allocution, the district court judge is not limited to the record. Because review of pleas are undertaken prior to sentence, the district court judge may personally address the defendant to resolve any doubts raised with respect to the voluntariness of the plea or to cure any defect that appears in the record.[6] *See, United States v. Rojas*, 898 F.2d 40, 42 (5th Cir.1990) ("An incorrect recommendation, as opposed to a poorly supervised voir dire, can easily be corrected by the district judge's rejecting the magistrate's recommendation and even holding a second evidentiary hearing if necessary.").

The final issue that must be addressed is whether the consent of the United States Attorney is necessary for the valid assignment of a guilty plea to a magistrate under statutory and constitutional strictures. *In re United States (United States v. Sayeedi)*, 903 F.2d 88 (2d Cir.1990), held that a magistrate "may not preside over jury selection ... over the Government's objection." *Id.* at 89. The taking of a guilty plea, however, involves a very different sort of proceeding than that of jury selection.

Article III of the Constitution provides that "[t]he Trial of all Crimes ... shall be by Jury." U.S. Const. art. III, § 2. This command confers upon "the Government, as a litigant, ... a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result." *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965). Indeed, this interest has been codified in Rule 23 of the Federal Rules of Criminal Procedure, which provides: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." Fed. R.Crim.P. 23(a).

Against this backdrop, Judge Lumbard, writing for the *In re United States* panel, concluded that:

As the Government's consent is necessary for a trial without a jury, we see no reason why it should not be necessary for the selection of the jury before a Magistrate. The Government is entitled to have an Article III judge preside during jury selection in those cases where it believes that this would better serve the public interest.

It may well be that selection of the jury before an Article III judge will insure that any rulings regarding the qualification and challenging of jurors will be free from errors from which the Government never has the opportunity to appeal, and even from errors which may jeopardize any verdict returned by the jury.

*Id.* at 91.

The United States has no similar interest in the taking of a guilty plea. The defendant wishes to plead guilty and the United States Attorney is perfectly willing to have him plead guilty.[7] The United States Attorney's principal, if not sole, substantive interest in the plea is that of repose. This interest, which is significant, *see McCarthy v. United States*, 394 U.S. at 465–66, 89 S.Ct. at 1170–71, is not undermined by having a magistrate take the plea. Any defect apparent from the record or asserted by either party prior to sentencing may be cured by the district judge prior to the imposition of sentence. Indeed, this possibility for early review of problems assures

---

**6.** Such review is similar to that permitted when a dispositive pretrial motion is referred to a magistrate to hear and recommend pursuant to 28 U.S.C. § 636(b)(3). As the House Judiciary Committee observed:

Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate. In some specific instances, however, it may be necessary for the judge to modify or reject the findings of the magistrate, *to take additional evidence, recall witnesses, or recommit the matter to the magistrate for further proceedings.*

H.R.Rep. No. 1629, 94th Cong., 2d Sess. 3, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6163 (emphasis supplied).

**7.** If there is a plea agreement that requires judicial approval, the magistrate judge may recommend only acceptance or rejection subject to *de novo* review at sentencing when the agreements will generally have effect.

a *greater* likelihood that the plea will withstand subsequent challenge: District judges at sentencing do not normally review the transcripts of the pleas that they take. When, however, a magistrate judge takes a plea subject to the conditions of the referral here, the district judge will necessarily review the transcript and consider any procedural complaints raised by the parties. This provides both the government and the defendant with an additional layer of scrutiny not otherwise generally available to them. As Justice Blackmun stated in his concurring opinion in *United States v. Raddatz*, "[i]n asking us to invalidate the magistrate program, respondent in effect requests removal of the second level of procedural protections afforded him and others like him. In my view, such a result would tend to undermine, rather than augment, accurate decisionmaking." 447 U.S. at 685, 100 S.Ct. at 2417 (footnotes omitted).

As the language from Justice Blackmun's opinion suggests, *United States v. Raddatz,* which approved the referral of a contested suppression hearing to a magistrate over the objection of the defendant, is dispositive here. The hearing in *Raddatz* involved principally a determination of the voluntariness of statements made by the defendant and, as the Supreme Court acknowledged, "the resolution of [such] a suppression motion can and often does determine the outcome of the case." *Id.* at 677–78, 100 S.Ct. at 2413. By comparison, as previously outlined, the magistrate is not being asked to resolve any issue that is subject to a dispute between the defendant and the United States Attorney. If the referral in *Raddatz* did not require the consent of the defendant, the referral here does not require the consent of the United States Attorney.

## CONCLUSION

The taking of guilty pleas, within the bounds of 28 U.S.C. § 636(b)(3) and of Article III of the United States Constitution, may be referred to United States magistrate judges upon the consent of the defendant. That referral is valid, moreover, even if the United States Attorney does not similarly consent to the referral. While the consent of the United States Attorney is not deemed essential to the referral of a guilty plea to a United States magistrate judge, I will honor any objection to such a referral that rests on the facts of a particular case. Indeed, it is not my intention to refer all guilty plea allocutions to a magistrate. The issue addressed here is whether the United States Attorney may arbitrarily deprive a district court judge of the discretion to make such a referral.