IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 96-50956

Conference Calendar

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JANET DEES,

Defendant-Appellant.

---

Appeal from the United States District Court
For the Western District of Texas

---

October 1, 1997

Before KING, HIGGINBOTHAM, and DUHÉ, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Janet Dees pled guilty to a bank fraud charge and now appeals her sentence. By our own motion, we raise but ultimately reject a jurisdictional challenge to Dees's conviction based on the fact that a magistrate judge conducted her plea proceeding. We dismiss Dees's appeal on the issue that she does press, a miscalculation of her sentence, because Dees in her plea agreement waived her right to an appeal.

I.

Dees participated in a scheme to fraudulently obtain bank loans for the financing of mobile-home sales. The government filed a single count information against Dees, charging her with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1344.

Dees decided to plead guilty. She entered into a plea agreement on August 19, 1994, in which she agreed to waive her right to appeal whatever sentence the district court imposed on her. She also consented to have a magistrate judge take her plea. On August 22, 1994, a federal magistrate judge conducted a plea proceeding pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The magistrate judge performed the standard allocution, probing Dees to ascertain whether her plea was knowing and voluntary. Dees confirmed to the magistrate judge that she understood the plea agreement and appreciated its consequences, particularly the waiver of appeal. Satisfied with Dees's responses, the magistrate judge recommended to the district court that it accept her plea. After doing so, the district court sentenced Dees to fifteen months in prison.

Dees then brought this appeal, arguing that the district court erred in sentencing her on the basis of the entire loss attributable to the four-year-long conspiracy. She contends instead that she should be sentenced only for the losses that accrued during the eighteen-month period in which she actively participated in the scheme.

## II.

Dees does not challenge the magistrate judge's authority to conduct her plea allocation. Because our court has the independent duty to determine whether jurisdiction lies in a case, however, we may consider jurisdictional issues by our own motion. See United States v. Mendoza, 491 F.2d 534, 536 (5th Cir. 1974). If the

2

magistrate judge did not have the authority to entertain Dees's plea, then neither her plea, her waiver of appeal, nor her sentence are valid.

Case law on the issue of magistrate judges' taking of guilty pleas is not well-developed. Only the Second, see United States v. Williams, 23 F.3d 629 (2d Cir.), cert. denied, 513 U.S. 1045, 115 S. Ct. 641, 130 L. Ed. 2d 547 (1994), and Tenth Circuits, see United States v. Ciapponi, 77 F.3d 1247 (10th Cir.), cert. denied, — U.S. —, 116 S. Ct. 1839, 134 L. Ed. 2d 942 (1996), have addressed the problem directly.[1] Yet judges have long expressed reservations about the practice. In 1991, the Judicial Conference's Committee on the Administration of the Magistrate Judges System rejected a proposal to endorse magistrate judges' taking of guilty pleas:

> The Committee expressed a strong view that judicial duties in critical stages of a felony trial, particularly the acceptance of guilty pleas and conducting sentencing proceedings, as well as presiding over the felony trial itself, are fundamental elements of the authority of district judges under Article III of the Constitution. These duties thus should not be delegated to magistrate judges as a matter of policy, regardless of whether the parties consent to the delegation.

Magistrate Judges Division of the Administrative Office of the United States Courts, A Constitutional Analysis of Magistrate Judge Authority, 150 F.R.D. 247, 306 (1993). The Judicial Conference took the same position in a 1981 report to Congress, reasoning that "it is preferable for the judge who is later to pronounce judgment and

---

[1] In addition, one district court has published a lengthy opinion on the subject. See United States v. Khan, 774 F. Supp. 748 (E.D.N.Y. 1991). Furthermore, our own circuit has ruled on a similar procedure. See United States v. Rojas, 898 F.2d 40 (5th Cir. 1990) (permitting magistrate judges to hold evidentiary hearings regarding the voluntariness of a defendant's plea).

determine the sentence to conduct the [plea] proceeding." Judicial Conference of the United States, <u>The Federal Magistrate System: Report to the Congress by the Judicial Conference of the United States</u> 52 (1981). The prevalence of this practice in our circuit and the serious constitutional questions that it raises warrants a discussion of its propriety from our court.

Determining whether a judicial duty is properly delegable to a magistrate requires a two-step analysis. First, we must ask whether Congress, in passing legislation governing magistrate judges, intended for them to perform the duty in question. Second, we must consider whether the delegation of the duty to a magistrate judge offends the principles of Article III of the Constitution. We turn first to the statutory question.

A.

The statutory authority of a magistrate judge is set out in 28 U.S.C. § 636 (The Magistrates Act). Among other things, the Act provides:

> (b)(1) Notwithstanding any provision of law to the contrary —
> (A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion . . . to dismiss or quash an indictment or information made by the defendant, [or] to suppress evidence in a criminal case . . . . A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.
> (B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A). . . .

4

28 U.S.C. § 636(b)(1)(A)-(B). Apart from this express assignment of duties, the Act further states that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).[2]

The Supreme Court construed the statutory bases of magisterial authority in criminal matters in two recent decisions, United States v. Peretz, 501 U.S. 923, 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991), and Gomez v. United States, 490 U.S. 898, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989). In both cases, the Court considered whether Congress intended for magistrate judges to have the power to conduct voir dire. In Gomez, the Court held that the Magistrates Act did not confer upon magistrate judges the unlimited authority to oversee voir dire. Gomez, 490 U.S. at 873-76, 109 S. Ct. at 2247-48. Peretz, however, clarified and narrowed the Gomez holding by reading the Magistrates Act to permit magistrate judges to conduct voir dire with the parties' consent. Peretz, 501 U.S. at 927-28, 111 S. Ct. at 2664.

Although Peretz and Gomez did not consider the statutory authority of magistrate judges to take guilty pleas, the few lower courts that have examined this issue have looked to these two cases for guidance. Because the Magistrates Act does not expressly authorize magistrate judges to conduct plea proceedings, see 28 U.S.C. § 636(b)(1)(A)-(B), these courts have focused on the

_____

[2]Although, by virtue of § 636(b)(3), constitutional and statutory inquiries into magisterial authority necessarily cover much the same ground, we consider the two issues separately.

authority of magistrate judges to do so under the "additional duties" clause of the Act, see 26 U.S.C. § 6363(b)(3) ("A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.").[3] As the Supreme Court noted in Peretz, a magisterial duty is a proper "additional duty" under the clause if it bears some relationship to the duties that the Act expressly assigns to magistrate judges. Peretz, 501 U.S. at 930-31, 111 S. Ct. at 2666; see also Gomez, 490 U.S. at 864, 109 S. Ct. at 2241.

Using the Peretz "additional duties" test, other courts have found that plea allocutions do not differ markedly from other duties performed by magistrate judges and hence are assignable to them under the Act. In United States v. Williams, the Second Circuit reasoned that

> [a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis. The catechism administered to a defendant is now a standard one, dictated in large measure by the comprehensive provisions of Rule 11 . . . . Further,

---

[3]An alternative statutory approach to the problem was suggested, but not relied upon, by a district court in United States v. Khan, 774 F. Supp. 748 (E.D.N.Y. 1991). Khan theorized that the acceptance of a guilty plea may fit within § 636(b)(1)(A), which permits magistrate judges to hear and dispose of certain pretrial matters. To the Khan court, a guilty plea is "a shorthand way of describing a motion by a defendant to be permitted to plead guilty." Id. at 752. Because § 636(b)(1)(A)'s list of motions upon which magistrate judges may not rule does not include guilty pleas, the Act must therefore permit magistrate judges to hear them. Id. Nevertheless, Khan hesitated to place plea agreements under § 636(b)(1)(A), as it reasoned that a guilty plea is effectively a dispositive motion, deserving of a higher level of scrutiny from the district court than the "clearly erroneous" standard provided for in the section. Id. Accordingly, the Khan court instead upheld this delegation to magistrate judges under the "additional duties" clause. We agree with this reasoning.

6

administering an allocution is less complex than a number of duties the Magistrates Act specifically authorizes magistrates to perform.

Williams, 23 F.3d at 632. Even if the taking of guilty pleas goes beyond the typical range of duties assigned to magistrate judges by the Act, the Williams court held that a defendant's consent to the magistrate judge's actions makes the delegation permissible. Id. at 633. Finally, the court found nothing in the legislative history of the Magistrates Act to indicate that Congress did not wish magistrate judges to conduct plea proceedings; rather, this delegation advanced the congressional goal of relieving the heavy caseload pressures on district courts. See id. at 633, 634. Relying upon similar reasoning, the Tenth Circuit has also found statutory authority for magistrate judges to conduct plea proceedings. See Ciapponi, 77 F.3d 1247.

Our circuit has not previously addressed the precise issue of a magistrate judge's statutory power to take a guilty plea. In United States v. Rojas, 898 F.2d 40 (5th Cir. 1990), however, we considered a closely analogous situation. On the morning of his trial, Rojas pled guilty to the district court on a drug charge. Later, however, at his sentencing, Rojas asked to withdraw his guilty plea, claiming that his attorney was not assisting him in his defense. The district court doubted this allegation, but nevertheless referred the matter to a magistrate judge to hold a hearing to gather evidence about whether his plea had been knowing and voluntary. Id. at 41. On appeal, Rojas challenged this referral under the Magistrates Act.

7

We found the hearing to be a pretrial duty that magistrate judges were expressly authorized to conduct under § 636(b)(1). Id. at 42. We reasoned that, even if Congress did not anticipate this particular type of delegation, in the end the magistrate judge was only making a recommendation to the district court concerning the plea. Because the district court retained full authority to review and reject the magistrate judge's recommendation, the delegation did not exceed the scope of magisterial authority contemplated by the Act. Id.

Because we believe plea allocutions differ fundamentally from the various matters expressly assigned to magistrate judges by § 636(b)(1), we follow the other courts that have taken up the issue and analyze them instead under the "additional duties" clause of § 636(b)(3). Even though Rojas only concerned § 636(b)(1), its reasoning still instructs our analysis in this case. As the Supreme Court noted in Peretz, an additional magisterial duty is proper under § 636(b)(3) if it bears some relationship to a duty that the Magistrates Act expressly assigns to magistrate judges. Peretz, 501 U.S. at 930-31, 111 S. Ct. at 2666. In Rojas, we found that evidentiary proceedings to determine the voluntariness of a plea fall within the Act's explicit assignment of duties. Thus, if a plea allocution is substantially similar to the Rojas procedure, it is a permissible additional duty for magistrate judges under § 636(b)(3) and Peretz.

We find that plea proceedings bear a close relationship to the evidentiary hearing we considered in Rojas. First, district courts

8

have the same authority to review a magistrate judge's performance of both tasks. A district court has the power to review <u>de novo</u> a magistrate's taking of a guilty plea, and it can reject the plea if it finds a problem in the allocution. Likewise, in upholding the delegation in <u>Rojas</u>, we stressed the importance of a district court's unfettered authority to review a magistrate judge's recommendation regarding the voluntariness of a plea. <u>Rojas</u>, 898 F.2d at 42. Second, the procedure that we found delegable to magistrate judges in <u>Rojas</u> scarcely differs from the plea proceeding before us today. In both cases, the magistrate judge's task is essentially the same: to determine whether a plea had been entered knowingly and voluntarily. In fact, if anything, the delegation of power to a magistrate judge in <u>Rojas</u> was more substantial than the delegation here. In <u>Rojas</u>, a magistrate judge was asked to obtain evidence to resolve a dispute over a plea. Here, the magistrate judge performed much more of a ministerial function, as this plea proceeding, like most others, was uncontested.

Indeed, because of the similarity between the <u>Rojas</u> procedure and plea proceedings, a district court in another circuit relied extensively upon <u>Rojas</u> in reaching its conclusion that the taking of a guilty plea is a permissible "additional duty" for a magistrate judge under § 636(b)(3). <u>See</u> <u>United States v. Khan</u>, 774 F. Supp. 748, 752-53 (E.D.N.Y. 1991). We agree and find that the magistrate judge had the statutory authority to take Dees's plea.

B.

9

Having concluded that the taking of a plea is a proper "additional duty" for magistrate judges under the Magistrates Act, we must next determine whether the practice comports with Article III of the Constitution.

The Supreme Court in Peretz laid out the constitutional analysis for considering the Article III constraints on magisterial authority. According to Peretz, the protections of Article III fall into two categories. First, Article III confers upon defendants a personal right to have their case heard by an Article III judge. Like most other personal rights of criminal defendants, this right is subject to waiver. See Peretz, 501 U.S. at 936-37, 111 S. Ct. at 2669. On the other hand, Article III also contains certain structural guarantees which ensure respect for separation-of-powers principles. See id.; see also Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848, 106 S. Ct. 3245, 3255, 92 L. Ed. 2d 675 (1986) ("Article III, § 1, serves . . . to protect 'the role of the independent judiciary within the constitutional scheme of tripartite government,' . . . .") (quoting Thomas v. Union Carbide Agric. Prods., Co., 473 U.S. 568, 583, 105 S. Ct. 3325, 3334, 87 L. Ed. 2d 409 (1985)). The Peretz Court implied that Article III's structural protections may not be waived. See Peretz, 501 U.S. at 937, 111 S. Ct. at 2669; see also Schor, 478 U.S. at 850-51, 106 S. Ct. at 3256-57 ("To the extent that [the] structural principle is implicated in a given case, the parties cannot by consent cure the constitutional difficulty for the same reason that the parties by

10

consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III, § 2.").

Because Dees consented to the use of a magistrate judge in her case, thereby waiving any personal right she may have had to have her guilty plea taken by an Article III judge, we must determine only whether the delegation here offended the structural principles of Article III, which are not subject to waiver. Although we have concerns about the performance of such an important duty by non-Article III judges, our reading of the Supreme Court's interpretation of the structural guarantees of Article III leads us to conclude that no such guarantees are implicated here.[4]

The precise contours of Article III are not sharply defined. See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 91, 102 S. Ct. 2858, 2882, 73 L. Ed. 2d 598 (1982) (Rehnquist, J., concurring) (indicating that one might view the Court's Article III jurisprudence as "but landmarks on a judicial 'darkling plain' where ignorant armies have clashed by night"). One principle, however, has guided much of our previous Article III analysis: We doubt that Article III will permit a non-Article III judge to preside over a felony trial. See United States v. Ford, 824 F.2d 1430, 1435 (5th Cir. 1987) (en banc), cert. denied, 484

---

[4]Our decision is grounded in constitutional analysis. Nevertheless, we are mindful of the important policy considerations surrounding this question. According to the Khan court, in the Eastern District of New York, plea proceedings take between twenty and forty-five minutes per defendant. Khan, 774 F. Supp. at 749. Delegating plea proceedings to magistrate judges can thus save district courts countless hours, which they might then apply to more weighty Article III matters.

U.S. 1034, 108 S. Ct. 741, 98 L. Ed. 2d 776 (1988); cf. In re Clay, 35 F.3d 190, 193 (5th Cir. 1994) (discussing importance of jury trials to Article III power).[5] Felony trials are complex affairs, requiring close oversight of delicate constitutional rights. Although a district court's ability to review a magistrate judge's actions saves many delegations from Article III problems, a district court cannot adequately review an entire felony trial. See Clay, 35 F.3d at 193-94. Even if such oversight were possible, double jeopardy principles might prevent retrials to correct magisterial mistakes in favor of defendants. Furthermore, in felony trials the federal government seeks to vindicate important national policies on a public stage. Irreparable harm would be done to the authority of the federal judiciary were such fundamental proceedings delegated to non-Article III tribunals. By giving away their critical criminal jurisdiction, federal judges would risk devitalizing their own coordinate branch of government, thereby upsetting our constitutional balance of power.[6] Thus, our

---

[5]Congress avoided this problem in enacting the Magistrates Act by withholding from magistrate judges the authority to preside over felony trials. See Gomez, 490 U.S. at 872, 109 S. Ct. at 2246 (analyzing Magistrates Act and concluding that "[t]he carefully defined grant of authority [to magistrates] to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial").

[6]The "slippery slope" scenario here is easy to envision. District courts might begin by delegating small felony trials to magistrate judges. Meeting with some initial success, the pressure of their crushing caseloads would weaken their resolve and cause district courts to delegate even more felony trials to magistrate judges. Eventually, Congress would notice the trend. When asked to authorize new judgeships, or simply confirm new candidates to fill vacant ones, Congress would instead seek to increase the number of

12

constitutional concerns about magisterial authority will grow as magistrate judges move closer to presiding over trials.

As an initial matter, therefore, we should consider the extent to which the delegation of a plea allocution to a magistrate judge encroaches upon a district court's exclusive felony trial domain. In this regard, voir dire is a helpful analytic tool. We have previously recognized that voir dire is an "integral component" of a criminal trial. Ford, 824 F.2d at 1438. The Supreme Court has agreed, labeling voir dire a "critical stage of the criminal proceeding." Gomez, 490 U.S. at 873, 109 S. Ct. at 2237; see also Swain v. Alabama, 380 U.S. 202, 218, 85 S. Ct. 824, 835, 13 L. Ed. 2d 759 (1965) (implying voir dire is a "necessary part of trial by jury"), overruled by Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 96 L. Ed. 2d 69 (1986). Yet, important as voir dire is to a criminal trial, the Supreme Court has held that the consensual delegation of it to a magistrate judge does not implicate the structural guarantees of Article III. See Peretz, 501 U.S. at 937, 111 S. Ct. at 2669. Because a district court retains the ultimate decision about whether to empanel the jury selected under the magistrate judge's supervision, the Supreme Court has reasoned that the assignment of voir dire to magistrate judges does not undermine

magistrate judges. With their lower salaries, magistrate judges would be more cost-effective than Article III judges, and, lacking life tenure, more politically servient as well. As the number of magistrate judges grew and the ranks of Article III judges thinned, district judges would become nothing more than judicial administrators, overseeing an army of magistrate judges. Our tripartite scheme of government would suffer. See Patrick E. Higginbotham, Bureaucracy—The Carcinoma of the Federal Judiciary, 31 Ala. L. Rev. 261, 265-66 (1980).

the fundamental authority of Article III judges. See id. 501 U.S. at 937, 111 S. Ct. at 2669-70.

Measured against the benchmark of voir dire, the taking of a guilty plea by a magistrate judge does not threaten the exclusive Article III power of a district court to preside over a felony trial. Plea proceedings are far more ministerial in nature than is voir dire. When defendants plead guilty, they are led through a series of standardized questions, most of which are dictated by Rule 11 of the Federal Rules of Criminal Procedure. Typically, the prosecution will not contest a plea allocution. Voir dire, on the other hand, is a delicate process whose outcome can be critical to the eventual trial. Voir dire influences the makeup of the jury that will ultimately decide the case, and during voir dire jurors get their first impression of the issues and parties that will be involved in the trial. Although a successfully completed plea proceedings may preclude an Article III court from holding a felony trial, it is not an essential component of the actual trial itself, like voir dire. If magistrate judges can oversee voir dire without interfering with the exclusive trial domain of Article III judges, so too must they be able to conduct plea proceedings.

Although we are satisfied that the assignment of plea proceedings to magistrate judges does not encroach upon the trial jurisdiction of Article III judges, there are other ways that magisterial power can violate the structural guarantees of Article III. Most notably, Article III judges cannot delegate to magistrate judges final authority over some important issue in a case, as only

14

Article III judges, not their adjuncts, have the power to dispose of cases or controversies. For this reason, the Supreme Court has stressed that the reviewability of a magistrate judge's actions is a critical factor in considering the propriety of an Article III judge's delegation of authority to a magistrate judge. See Peretz, 501 U.S. at 937-39; 111 S. Ct. at 2669-71. Even if a "'controversial matter might be delegated to a magistrate,'" so long as the district court has the power to review the magistrate judge's actions, there is no "'threat to the judicial power or the independence of judicial decisionmaking that underlies Article III.'" Peretz, 501 U.S. at 938, 111 S. Ct. at 2670 (quoting United States v. Raddatz, 447 U.S. 667, 685-86, 100 S. Ct. 2406, 2417-18, 65 L. Ed. 2d 424 (1980) (Blackmun, J., concurring)). Only when a magistrate judge possesses final decisionmaking authority over a substantial issue in a case does an Article III problem arise. See Raddatz, 447 U.S. at 683, 100 S. Ct. at 2416.

We find that plea proceedings conducted by magistrate judges are sufficiently reviewable so as not to threaten Article III's structural guarantees. The taking of a plea by a magistrate judge does not bind the district court to accept that plea. Rather, the district court retains ultimate control over the plea proceedings, which are submitted to the court for its approval. Williams, 23 F.3d at 634. Moreover, district courts review plea proceedings on a de novo basis, contributing to the ministerial nature of the

15

magistrate's task.[7] See In re Texas Gen. Petroleum Corp., 52 F.3d 1330, 1337 (5th Cir. 1995) ("De novo review over an adjunct's ruling is crucial to maintaining Article III control over an adjunct.").

Again, voir dire is a useful standard against which to measure the taking of a guilty plea. As our circuit has previously suggested, de novo review of voir dire proceedings confers upon the parties only an illusory protection, as a district court cannot accurately assess the manner of a potential juror's testimony on the basis of a cold, written record. See Ford, 824 F.2d at 1437. Moreover, it is doubtful whether a district court can effectively repeat voir dire after the magistrate judge's first, failed attempt. See id. At one point, the Supreme Court seemed to agree with our sentiments. See Gomez, 490 U.S. at 874, 109 S. Ct. at 2247 ("[W]e harbor serious doubts that a district judge could review [voir dire] meaningfully."). Yet in Peretz, the Court later held that because a district court retains the ultimate decision over whether to empanel a jury selected under a magistrate's watch, voir dire is sufficiently reviewable to allow it to be assigned to magistrate judges without damage to Article III's structural guarantees. Peretz, 501 U.S. at 937, 111 S. Ct. at 2669-70.

If voir dire is a sufficiently reviewable procedure to permit its delegation to a magistrate judge, so too must be a plea

---

[7]Even though the Magistrates Act does not expressly provide for de novo review of plea proceedings, the only constitutional requirement is that it be available if the parties so request. See Ciapponi, 77 F.3d at 1251 (citing Peretz, 501 U.S. at 939, 111 S. Ct. at 2670).

16

proceeding. A district court's review of voir dire is distant and faceless and may require it to scrutinize the testimony of dozens of potential jurors. Moreover, the reviewing court does not have the realistic option of conducting a second voir dire on its own. To review a plea allocution, on the other hand, a district court need only look into the testimony of a single individual, asked a series of standardized, non-confrontational questions. If the court is troubled by some response given by the defendant, it can easily perform another allocution of its own to clear up the problem. As we noted in Rojas, "[a]n incorrect recommendation [following an evidentiary hearing about the voluntariness of a plea], as opposed to a poorly supervised voir dire, can easily be corrected by the district judge's rejecting the magistrate's recommendation and even holding a second evidentiary hearing if necessary." Rojas, 898 F.2d at 42. The same principle applies to plea proceedings themselves.

Accordingly, every court that has considered the issue has concluded that plea proceedings conducted by magistrate judges do not violate Article III's structural guarantees because they are fully reviewable by district courts. See Ciapponi, 77 F.3d at 1251; Williams, 23 F.3d at 634; Khan, 774 F. Supp. at 754-55. We agree with these courts. Although the taking of a plea can be a critical function which in a perfect world might best be left to an Article III judge, plea proceedings are no more crucial to the spirit of Article III than is voir dire, which the Supreme Court has held may be delegated to magistrate judges with the consent of the parties.

17

Therefore, the right to have an Article III judge preside over a plea proceeding is personal, not structural. Should a defendant waive that personal right, Article III permits delegation of plea allocutions from the district court to a magistrate judge. Hence, in taking a plea with the consent of the parties, a magistrate judge cannot "emasculat[e] constitutional courts." National Ins. Co. v. Tidewater Co., 337 U.S. 582, 644, 69 S. Ct. 1173, 1209, 93 L. Ed. 1556 (1949).

### III.

Having disposed of this jurisdictional matter, we now turn to the issue that Dees herself raises on appeal. Dees challenges the district court's calculation of her sentence under the Sentencing Guidelines. She contends that her sentence should be based on the amount of loss that accrued during the period in which she was actively involved with the conspiracy to defraud banks. The district court, however, calculated her sentence based upon the entire loss that accumulated during the life of the scheme.

As part of her plea agreement, Dees agreed not to appeal her sentence on any grounds. Dees now argues that this waiver of her right to an appeal was not informed and voluntary, as she had no idea that the district court would hold her accountable for the entire amount of loss. Dees was, however, informed of the maximum term of imprisonment to which she could be sentenced, and her actual sentence fell within that range. Accordingly, her plea was informed and voluntary. United States v. Abreo, 30 F.3d 29, 32 (5th Cir.), cert. denied, 513 U.S. 1064, 115 S. Ct. 681, 130 L. Ed. 2d

18

613 (1994); <u>United States v. Santa Lucia</u>, 991 F.2d 179, 180 (5th Cir. 1993). So long as a plea is informed and voluntary, we will enforce a waiver of appeal. <u>United States v. Melancon</u>, 972 F.2d 566 (5th Cir. 1992). Thus, we will not entertain Dees's appeal.

IV.

For the foregoing reasons, we DISMISS this APPEAL.