**UNITED STATES of America, Plaintiff–Appellee,**

v.

**George M. CIAPPONI, aka George Norman Schreiber, Defendant–Appellant.**

**No. 94–2274.**

United States Court of Appeals, Tenth Circuit.

Feb. 20, 1996.

Rehearing Denied March 28, 1996.

Judith A. Patton, Assistant United States Attorney (John J. Kelly, United States Attorney, with her on the brief), Las Cruces, New Mexico, for Plaintiff–Appellee.

Jenine Jensen, Assistant Federal Public Defender. (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colorado, for Defendant–Appellant.

Before MOORE and LOGAN, Circuit Judges, and O'CONNOR, Senior District Judge.[*]

EARL E. O'CONNOR, Senior District Judge.

Defendant Ciapponi pled guilty before a magistrate judge in the United States District Court for the District of New Mexico to possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Thereupon, the district judge sentenced defendant to 33 months imprisonment based, in part, on a criminal history category of V. Defendant appeals, raising two issues: (1) whether the magistrate judge lacked jurisdiction to accept defendant's guilty plea; and (2) whether defendant's two prior convictions should have been considered as "related" offenses in calculating his criminal history category. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirm.

### Background

On October 30, 1990, defendant was arrested at a United States Border Patrol checkpoint in southern New Mexico. Approximately ten kilograms of marijuana were found in the vehicle defendant was driving at the time of his arrest. The grand jury returned an indictment against defendant, charging him with one count of possession with intent to distribute less than 50 kilograms of marijuana. Defendant failed to appear for arraignment and an arrest warrant was issued. Nearly three years later, defendant was found in Colorado, where he was in state custody on drug charges, and was returned to New Mexico.

The court appointed counsel for defendant, who negotiated a plea agreement with the government. In exchange for defendant's guilty plea, the government agreed that: (1) defendant was entitled to a two-level reduction under United States Sentencing Guideline ("U.S.S.G.") § 3E1.1 for acceptance of responsibility, and (2) defendant played only a minor role of courier in the offense.

On May 24, 1994, District Judge LeRoy Hansen, sitting in Albuquerque, New Mexico, designated Magistrate Judge Galvan to accept defendant's guilty plea in Las Cruces. Defendant appeared before Magistrate Judge Galvan on June 13, 1994. At the onset of the hearing, the magistrate judge informed defendant that he had a right to appear before a district judge to enter his plea. With the advice of counsel, defendant executed a Consent to Proceed form, waiving his right to enter his plea before a district judge and consenting to proceed before the magistrate judge. Magistrate Judge Galvan then proceeded in accordance with Rule 11 of the Federal Rules of Criminal Procedure and accepted defendant's plea of guilty.

On August 30, 1994, defendant and his counsel appeared before District Judge Hansen for sentencing. Defendant made no objection to the presentence report or to the court's finding of an offense level of 14 and a criminal history category of V, resulting in a guideline range for imprisonment of 33–41 months. The court sentenced defendant to 33 months imprisonment, three years supervised release, and a $50 special assessment.

### Discussion

*I. The magistrate judge's authority to accept defendant's guilty plea.*

Defendant now contends that the taking of his plea by the magistrate judge violates the Federal Magistrates Act, 28 U.S.C. §§ 631–639 (1988) (the "Magistrates Act"), and Article III of the Constitution. He argues that a magistrate's authority is jurisdictional and cannot be waived, even with defendant's consent.

■ We first note that defendant did not raise this objection below. The contemporaneous objection requirement of Rule 30 of the Federal Rules of Criminal Procedure generally requires that a party make a timely objection to preserve an issue for appeal. However, pursuant to Rule 52(b), we may review a legal issue not preserved below for plain error. *See, e.g., United States v. Ola-*

[*] The Honorable Earl E. O'Connor, Senior United States District Judge for the District of Kansas, sitting by designation.

*no,* 507 U.S. 725, 734–36, 113 S.Ct. 1770, 1778–79, 123 L.Ed.2d 508 (1993) (appellate court should conduct plain error review under Rule 52(b) "in those circumstances where a miscarriage of justice would otherwise result"). A plain error involves a mistake that is both "obvious and substantial." *United States v. Meek,* 998 F.2d 776, 779 (10th Cir. 1993). Because defendant raises a potential constitutional error, we "apply the plain error rule less rigidly." *United States v. Nelson,* 36 F.3d 1001, 1003 (10th Cir.1994).

"Congress intended magistrates to play an integral and important role in the federal judicial system." *Peretz v. United States,* 501 U.S. 923, 928, 111 S.Ct. 2661, 2665, 115 L.Ed.2d 808 (1991). In furtherance of that goal, Congress amended the Magistrates Act in 1976 in response to a "series of court decisions that construed the Magistrates Act narrowly, stifling the greater use of these judicial officers by the district courts." *United States v. Williams,* 23 F.3d 629, 632 (2nd Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 641, 130 L.Ed.2d 547 (1994). The Magistrates Act, as amended, expressly authorizes district court judges to assign additional duties to magistrate judges: "A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). The legislative history of the Magistrates Act demonstrates that, in enacting the "additional duties" clause, Congress intended to aid overburdened district courts with their caseloads by significantly expanding the duties which may be delegated to a magistrate judge to permit greater use of magistrate judges as judicial officers. *Id.* at 632–33.

■ Analysis of defendant's challenge to the magistrate judge's authority involves both statutory and constitutional questions. Our statutory inquiry is whether referral of the task at issue falls within the "additional duties" clause of the Magistrates Act. We ask whether the task bears some reasonable relation to the specified duties which may be assigned to magistrate judges under the Magistrates Act.[1] *Id.* at 930–31, 111 S.Ct. at 2666–67.

Even if a task is authorized under the Magistrates Act, a second inquiry arises regarding whether referral of a task to a magistrate judge impinges a criminal defendant's constitutional right under Article III to have a district court judge preside at all critical stages of a felony trial. *See Peretz,* 501 U.S. at 934, 111 S.Ct. at 2668.

■ In construing the Magistrates Act, the principle of constitutional avoidance[2] requires clear evidence that "Congress actually intended to permit magistrates to take on a role that raise[s] a substantial constitutional question." *Id.* at 930, 111 S.Ct. at 2666. However, when the defendant consents to proceed before a magistrate judge, the constitutional analysis changes significantly because no constitutional right is implicated if the defendant does not object to the absence of an Article III judge. *Id.* at 936, 111 S.Ct. at 2669.

■ The Supreme Court considered the "additional duties" clause in the criminal context in *Peretz,* 501 U.S. 923, 111 S.Ct. at 2662, and held that, with a defendant's consent, a magistrate judge may preside over jury selection in a felony case. Contrasting *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (holding that a magistrate lacks authority to preside over jury selection in a felony case if the defendant objects), the Court stressed that the defendant's consent was critical to both the statutory and constitutional inquiries. *Peretz,* 501 U.S. at 931–40, 111 S.Ct. at 2666–71.

---

1. The Magistrates Act authorizes magistrate judges to perform numerous ministerial tasks. *See* 28 U.S.C. § 636(b) and (c); *Gomez v. United States,* 490 U.S. 858, 867–70, 109 S.Ct. 2237, 2243–45, 104 L.Ed.2d 923 (discussing the various tasks that a magistrate is authorized to perform under the Magistrates Act). In addition, with consent of the parties, the Magistrates Act expressly authorizes a magistrate judge to try civil matters, 28 U.S.C. § 636(c)(1), and misde-

meanor criminal offenses, 28 U.S.C. § 636(a)(3) and 18 U.S.C. § 3401.

2. Constitutional avoidance refers to the Court's "settled policy to avoid an interpretation of a federal statute that engenders constitutional issues." *Gomez,* 490 U.S. at 864, 109 S.Ct. at 2241.

The Second Circuit recently addressed the question of a magistrate judge's authority to accept a guilty plea in *United States v. Williams*, 23 F.3d at 632–35. Looking to *Peretz*, the court held that the acceptance of a guilty plea in a felony case by a magistrate judge, with the defendant's consent, is authorized under the "additional duties" clause and does not affront the structural protections contemplated by Article III of the Constitution. We agree with the Second Circuit's well-reasoned analysis and find its conclusion persuasive.

In *Williams*, 23 F.3d at 631, the magistrate judge conducted the Rule 11 plea allocution, found a factual basis for the plea, and made a recommendation to the district judge that the plea be accepted. Subsequently, the defendant sought to withdraw his guilty plea prior to sentencing and challenged the magistrate's authority to conduct the Rule 11 allocution. *Id.* The district court denied the defendant's motion to withdraw the plea, holding that the allocution was "clear and unmistakable" and the defendant had admitted his guilt. *Id.*

Unlike the defendant in *Williams*, the defendant here did not move to withdraw his plea or otherwise request review by the district court of the plea proceeding. He raised no objection to the magistrate judge's taking of the plea until the instant appeal. In that respect, the present case is more analogous to *Peretz* than is *Williams*.

■ In *Peretz*, the defendant consented to the assignment of jury selection to the magistrate judge. He neither asked the district court to review the voir dire proceedings conducted by the magistrate judge, nor did he object at any time prior to appeal. The Court held, "a defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence." *Id.* at 936, 111 S.Ct. at 2669. The same may be said in the case before us. Defendant's failure to object or otherwise request review by the district court leaves him in no position to now complain that the magistrate judge's taking of his guilty plea, a proceeding to which he expressly consented, violated his constitutional rights. "The most basic rights of criminal defendants are ... subject to waiver." *Peretz*, 501 U.S. at 936, 111 S.Ct. at 2669. Consistent with *Peretz* and *Williams*, we hold that, with a defendant's express consent, the broad residuary "additional duties" clause of the Magistrates Act authorizes a magistrate judge to conduct a Rule 11 felony plea proceeding, and such does not violate the defendant's constitutional rights.

■ Defendant raises one point beyond those addressed in *Williams*. Citing *United States v. Khan*, 774 F.Supp. 748, 749 (E.D.N.Y.1991) (referral of the plea proceeding was conditioned on a subsequent review by the district court of the transcript to ensure voluntariness and compliance with Rule 11), defendant complains that the district judge did not conduct a review of the plea proceeding. We find defendant's argument without merit for two reasons.

First, it is implicit in the sentencing record, which includes the presentence investigation, that the district judge reviewed the facts of the case against defendant and the basis for his guilty plea. Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding.

Second, to the extent that defendant challenges the delegation of the plea proceedings because section 636(b)(3) contains no express procedures for de novo review, the Supreme Court rejected this argument in *Peretz*. The Court held, "to the extent 'de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties.'" 501 U.S. at 937–38, 111 S.Ct. at 2670 (quoting *United States v. Peacock*, 761 F.2d 1313, 1318 (9th Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985)), *see also United States v. Raddatz*, 447 U.S. 667, 685–86, 100 S.Ct. 2406, 2417–18, 65 L.Ed.2d 424 (1980) (J. Blackmun concurring) (upholding the delegation of a suppression motion hearing because the "entire process takes place under the district court's total control and jurisdiction.").

In sum, neither the Magistrates Act nor Article III requires that a referral be conditioned on subsequent review by the district

judge, so long as a defendant's right to demand an Article III judge is preserved. Federal Rule of Criminal Procedure 32(d) preserves a defendant's right to demand an Article III judge by providing for review of a plea proceeding, as a matter of right, through a motion to withdraw a guilty plea prior to sentencing. The availability of such a procedure adequately protects a defendant's rights under Article III of the Constitution.

### II. Calculation of defendant's criminal history category.

 Defendant also challenges the calculation of his criminal history category. Defendant did not object at the sentencing hearing, which normally precludes review by this court. *United States v. Nelson*, 36 F.3d at 1003. Clearly, factual disputes bearing on the sentence, which are not raised at sentencing, are waived. *United States v. Saucedo*, 950 F.2d 1508, 1518 (10th Cir.1991) (citing *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir.), *cert. denied*, 500 U.S. 924, 111 S.Ct. 2032, 114 L.Ed.2d 117 (1991)). However, we recognize a narrow exception and review a legal question involving application of the sentencing guidelines for plain error. *Nelson*, 36 F.3d at 1003.

 Defendant claims that two previous convictions for state law drug offenses, for which he received six criminal history points, were "related offenses" under U.S.S.G. § 4A1.2(a)(2). He argues that the two prior offenses should have been treated as one case for purposes of § 4A1.1(a), (b), and (c), and only three criminal history points assessed for them. *See United States v. Gary*, 999 F.2d 474, 479 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 259, 126 L.Ed.2d 211 (1993).

U.S.S.G. § 4A1.2(a)(2) provides that "[p]rior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history." Application note 3 to U.S.S.G. § 4A1.2 (1989) interprets "related cases" as follows:

> Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

The presentence investigation report shows that the first offense involved the sale of cocaine and LSD by defendant, using the names Stanley Eugene Daves and Jason George Lepanto, on May 25, 1993. The second offense occurred on June 1, 1993, when defendant, using the name Jason George Lepanto, sold 262 grams of cocaine to an undercover officer. The two offenses were charged in two separate indictments, 93–1571 and 93–1163, respectively. Defendant was sentenced to two years on the 93–1571 indictment, to run concurrent with the four-year sentence on the 93–1163 indictment.

Defendant argues that his two state drug offenses were "related" because they were not separated by an intervening arrest,[3] were part of a common scheme or plan, and were consolidated for sentencing. He contends that there is a factual nexus between the two offenses because the two drug sales occurred one week apart, he was arrested by the same law enforcement agency, and both crimes involved street sales of cocaine.

Admittedly, the two offenses are similar in that they both involve the sale of controlled substances. However, the two offenses occurred on two separate occasions and under different circumstances—the first offense involved the sale of cocaine and LSD to an undisclosed person, while the second offense involved the sale of cocaine to an undercover officer. Under these circumstances, the district court did not err in finding that the two offenses were not a part of a common scheme or plan.

In addition, the two prior cases were not consolidated. In *United States v. Alberty*, 40 F.3d 1132, 1134 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1416, 131 L.Ed.2d 300 (1995), we held that a defendant

---

3. Defendant is apparently looking to the more recent versions of U.S.S.G. § 4A1.2 application note 3, which mentions an intervening arrest as a factor in determining whether two prior offenses are related. However, the record reflects that defendant was sentenced under the 1989 version of the guidelines, which does not include the intervening arrest factor.

bears the burden of showing that two offenses were consolidated by presenting documentation of the consolidation, such as a formal order of transfer or consolidation. Absent such reliable proof of consolidation, the mere fact that the sentences on the two offenses were ordered to run concurrently does not establish that the two offenses were related for purposes of U.S.S.G. § 4A1.1. *Id.; see also United States v. Villarreal,* 960 F.2d 117, 119 n. 4 (10th Cir.), *cert. denied,* 506 U.S. 856, 113 S.Ct. 166, 121 L.Ed.2d 114 (1992) (concurrent sentencing of two offenses does not equate with consolidation for purposes of calculating the appropriate criminal history category); *United States v. Wilson,* 41 F.3d 1403, 1404 (10th Cir.1994) (sentencing for two distinct offenses by the same court on the same day does not make them related under U.S.S.G. § 4A1.2). On the record as a whole, it was not plain error for the district court to treat the offenses as separate in calculating defendant's criminal history category.

AFFIRMED.