**UNITED STATES of America,**

v.

**Luis TAVERAS, Defendant.**

**No. 99 CR. 802(RWS).**

United States District Court,
S.D. New York.

March 1, 2001.

---

Mary Jo White, United States Attorney for the Southern District of New York by Steven R. Peikin, Assistant U.S. Attorney, New York City, for the United States of America.

The Legal Aid Society, Federal Defender Division by Ian J. Yankwitt, Cecillia D. Wang, New York City, for Defendant.

## OPINION

SWEET, District Judge.

Defendant Luis Taveras ("Taveras") has moved for reconsideration of this Court's acceptance of his guilty plea, or, in the alternative, for an order permitting him to withdraw his plea, pursuant to Federal Rule of Criminal Procedure 32(e), Article III of the United States Constitution, the Fifth and Sixth Amendments, and Federal Rule of Criminal Procedure 11. The government opposes the motion. For the rea-

sons set forth below, the motion is granted.

### Facts And Prior Proceedings

On February 14, 2000, a four-count indictment was issued charging Taveras and his co-defendants in this criminal action, Jeffrey Cohn ("Cohn"), Humberto Del Rosario ("Humberto Del Rosario"), and Christian Del Rosario ("Christian Del Rosario") with conspiring to defraud the United States, obstructing justice, and making false statements to government agents, in violation of 18 U.S.C. § 371 (Count One), obstruction of justice, in violation of 18 U.S.C. § 1503(a) (Count Two), and making false statements to government agents, in violation of 18 U.S.C. § 1001(a) (Counts Three and Four).[1]

The indictment charges Taveras with having participated in a fraudulent scheme to obtain a sentence reduction for his cousin, Christian Del Rosario, who was at that time serving a sentence for narcotics trafficking. Specifically, the indictment alleges that: with the assistance of Christian Del Rosario's defense attorney, Cohn, Taveras arranged to purchase for $15,000 information regarding a large-scale narcotics smuggling scheme; the source of this information was Reginald Barrett ("Barrett") who, unbeknownst to Taveras and his alleged co-conspirators, was a confidential informant working under the supervision and direction of the FBI; after purchasing the information from Barrett, Taveras and his co-defendants arranged to offer it to the government as part of a so-called "third-party cooperation arrangement"; pursuant to that arrangement, Humberto Del Rosario—the brother of Christian Del Rosario—proposed to provide the purchased information to the government in exchange for the government's

agreement to move for a reduction in Christian Del Rosario's sentence; and, understanding the government would not enter into this proposed arrangement if it knew that the information had been purchased for money,[2] Taveras and his co-defendants agreed to falsely represent the nature and source of that information.

The indictment further alleges that: on July 19, 1999, Humberto Del Rosario met with government representatives to offer the information about narcotics smuggling which had been purchased from Barrett; during the meeting, as previously planned with Taveras and others, Humberto Del Rosario falsely denied that the information had been purchased, and instead claimed that it had been provided by a family member living in the Dominican Republic.

The government's evidence against Taveras includes numerous tape-recorded conversations between Taveras and Barrett (Barrett was wearing a recording device), as well as a confession by Taveras made to FBI agents shortly after his arrest on July 23, 1999.[3]

On August 21, 2000, Taveras executed a "Consent To Proceed Before A United States Magistrate Judge On A Felony Plea Allocution," which states in relevant part:

> The undersigned defendant [Taveras] ... hereby consents ... that the proceedings required by Rule 11, Fed. R.Crim.P. for me to enter a plea of guilty in my case, or to change my plea, if one has been previously been [sic] made, from not guilty to guilty, shall be conducted before a United States Magistrate Judge subject to review and approval by the District Judge assigned or to be assigned to my case.

---

1. The original indictment was issued on August 18, 1999, and was substantially identical to the later filed indictment, except that it did not name Christian Del Rosario as a defendant.

2. The Office of the United States Attorney for the Southern District of New York has a policy against entering into third-party cooperation agreements where the information involved was purchased.

3. Taveras moved to suppress his post-arrest statement, which motion was denied by this Court. *See United States v. Taveras*, No. 99 Cr. 807 (S.D.N.Y. April 20, 2000).

That same day, the Honorable Frank Maas, United States Magistrate Judge, conducted a guilty plea allocution hearing. Counsel for Taveras informed Judge Maas that Taveras intended to plead guilty to Count One (the conspiracy count), and the government informed Judge Maas that "the only agreement we have is that at the time of sentencing we [the government] will move to dismiss the remaining counts if the plea is accepted."

Judge Maas proceeded to question Taveras concerning his competency to plead guilty and the voluntariness of his plea. Then, following a detailed discussion of the rights Taveras would waive by pleading guilty, Judge Maas sought to determine whether there was a sufficient factual basis for the plea.

In his allocution, Taveras described having entered into an agreement to provide information to the government in order to secure a sentence reduction for Christian Del Rosario, stating "[d]uring 1999, I entered with two other individuals in an agreement to provide information and to get a Rule 35 for my cousin Christian Del Rosario." Taveras acknowledged that he purchased this information, and that "there was a probability that this information—me purchasing the information may not be told to the government. But I did not process the fact of asking the question specifically what was going to be told to the government."

Following an off-the-record conversation with his counsel, Taveras attempted to clarify his state of mind, stating, "I did not specifically ask whether or not the government was going to be misled about this fact [the purchase of the information] to the other individual .... Nonetheless, I continued participation in this matter." Taveras then responded affirmatively to questions from Judge Maas indicating that he understood that his actions were part of an arrangement whereby Christian Del Rosario would receive the benefit of third party cooperation.

Judge Maas then inquired further of Taveras regarding his knowledge of the United States Attorney's Office's policy with respect to third party cooperation. Taveras indicated that he did not know what the government's policy was, but that he thought that the information that was purchased had to be truthful—and that he thought it was truthful. He also explained that because he was "with a lawyer," *i.e.,* Cohn, he "thought everything was ok." Judge Maas then stated that he did not believe the allocution was sufficient to support Taveras's guilty plea, since "[i]f Mr. Taveras didn't know what the policy of the office was, I don't know how he could have consciously avoided trying to find out what a policy was." After another off-the-record consultation with defense counsel, Taveras stated that he did "become aware that there was a probability that the information that I purchased was not going to be represented to the government as me purchasing it. But I did not specifically ask the question of the process of this situation at the time." Taveras further explained that "it didn't seem to be important," or he "didn't know to ask the question." Judge Maas again indicated that he could not accept the plea based on this allocution.

After Taveras conferred once more with defense counsel, the following exchange occurred:

> The Court: So let me ask you again, Mr. Taveras, to explain to me in your own words why it is you didn't ask about what the United States Attorney's office would be told.

> Taveras: I chose not to ask whether anyone was, going to lie and mislead the government. I chose not to ask because I did not want to know the answer.

Both the Court and defense counsel indicated that this statement was sufficient. The government sought further colloquy regarding whether Taveras "knew what he was doing was wrong," which resulted in the following exchange:

The Court: Did you understand that it would be against the law for somebody to go to the United States Attorney's office and knowingly make false statements to the United States Attorney's office about how this cooperation was secured?

I'm not asking you what you understood would actually be represented in this case, but did you understand generally at this time that it was against the law for somebody, anybody, to go to the United States Attorney's office and misrepresent how this cooperation was secured?

Taveras: Yes, your honor.

Judge Maas subsequently indicated that a sufficient plea had been established, observing,

[w]e had some back and forth about the relevant facts, but ... when this guilty plea resumed ... Mr. Taveras recited facts which are more than sufficient ... for a finder of fact to conclude that Mr. Taveras had the requisite state of mind. So on that basis I also think that there is a sufficient factual basis for the plea and I intend to recommend to Judge Sweet that the plea be accepted.

On September 18, 2000, Taveras's co-defendants proceeded to trial. On October 2, 2000, this Court granted Christian Del Rosario's motion for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(a). On October 11, 2000, the jury acquitted the two remaining defendants, Cohn and Humberto Del Rosario, on all counts.

On October 18, 2000—five days after the acquittals of his co-defendants—Taveras's counsel advised the Court by letter that Taveras "no longer wishes to plead guilty," and requested a conference. *See* Letter from Ian Yankwitt to the Court of 10/18/00.

On October 26, 2000, this Court issued an order formally accepting Taveras's guilty plea (the "October 26 Order"), which states:

This Court has determined based upon a review of the transcript [of Taveras's guilty plea hearing] that Taveras entered the guilty plea knowingly and voluntarily and that there is a factual basis for the plea.

At a conference held later that afternoon, Taveras orally moved to withdraw his guilty plea on the grounds that (1) this Court should not have accepted Taveras's plea because it was no longer voluntary; and (2) the allocution before Judge Maas did not establish the first element of a conspiracy, *i.e.*, agreement to commit a crime, and therefore was factually insufficient. Written submissions were received, and oral argument was heard on January 17, 2001, at which time the matter was deemed fully submitted.

### *Discussion*

#### I. *The Legal Standard Under Rule 32(e) and Rule 11(f).*

Federal Rule of Criminal Procedure 32(e) provides that a court may permit withdrawal of a guilty plea before sentence is imposed "if the defendant shows any fair and just reason." Fed.R.Crim.P. 32(e).[4] However, it is well-settled that "a defendant has no absolute right to withdraw his plea of guilty," *United States v. Grimes*, 225 F.3d 254, 259 (2d Cir.2000), because " '[s]ociety has a strong interest in the finality of guilty pleas,' and allowing withdrawal of pleas not only 'undermines confidence in the integrity of our judicial procedures,' but also 'increases the volume of judicial work, and delays and impairs the orderly administration of justice.' " *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir.1997) (*quoting United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989)). Thus, it is the defendant who bears the

---

**4.** As further explained below, to the extent that Taveras contends that the October 26 Order cannot stand due to the structural guarantees of Article III, he does not rely on Rule 32(e) and, indeed, contends that this rule is inapposite.

burden of showing that there are valid grounds for withdrawal of a plea. *Grimes*, 225 F.3d at 259 (internal citation omitted).

■ In determining whether there is a "fair and just reason," the court should consider whether the defendant has asserted his legal innocence, the amount of time that has passed between the plea and the motion to withdraw, whether the government would be prejudiced by withdrawal, and the reasons offered in support of the motion. *See* Fed.R.Crim.P. 32(e) Advisory Committee Note (1983); *see also Grimes*, 225 F.3d at 259 (court should consider "(1) the time lapse between the plea and the motion; and (2) whether the government would be prejudiced by a withdrawal of the plea") (internal citation and quotation marks omitted).

■ Federal Rule of Criminal Procedure 11(f) provides that, "[n]otwithstanding the acceptance of a plea of guilty, the [district] court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.R.Crim.P. 11(f). This rule "requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *Maher*, 108 F.3d at 1524. This requirement "protect[s] a defendant who is in a position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Id.* (internal citation and quotation marks omitted).

### A. *There Was A Sufficient Factual Basis For The Plea*

Taveras contends this Court should reconsider the October 26 Order on the ground that Rule 11(f), which requires a sufficient factual basis for a plea, was not satisfied. *See* Fed.R.Crim.P. 11(f).

■ The first and second elements of the crime of conspiracy are: an agreement or understanding between two or more persons to participate in an unlawful scheme, and knowing participation, *i.e.,* that the defendant in question joined the conspiracy with knowledge of its unlawful purpose. *See* 1 L. Sand., *et al., Modern Federal Jury Instructions 2000,* Instruction 19–3, 19–6; *see also, e.g., United States v. Pinckney,* 85 F.3d 4, 8 (2d Cir. 1996) (conspiracy requires proof of an agreement to commit an offense).[5]

■ Taveras contends that he did not allocute to entering into an unlawful agreement with another person and, therefore, that his plea did not have a sufficient factual basis under Rule 11(f). Rather, according to Taveras, the only agreement to which he allocuted was to seek to provide third-party cooperation for the benefit of Christian Del Rosario. Such an agreement is not unlawful. Nor is purchasing information and then providing it to the government unlawful. Rather, given the policy of the United States Attorney for the Southern District of New York, the unlawfulness of the alleged conspiracy hinges on the making of false statements to the government with respect to the source of the information and whether it had been purchased.

After several failed attempts to allocute to the satisfaction of Judge Maas, Taveras acknowledged that he "chose not to ask whether anyone was going to lie ... because [he] did not want to know the answer." Taveras contends that the colloquy concerning his state of mind, which culminated in this last admission, centered exclusively on his knowledge regarding the policy of the United States Attorney's Office, and his knowledge or suspicion that someone might lie to the government. According to Taveras, the colloquy did not elicit facts concerning an agreement, either explicit or implicit, between him and someone else to commit an unlawful act.

---

**5.** The third element of conspiracy, an overt act, is not relevant here.

However, the factual insufficiency identified by Taveras is not an insufficiency at all but, rather, a consequence of his decision to allocute on a theory that he consciously avoided knowledge of the unlawful objectives of the charged conspiracy. "Conscious avoidance" is a permissible basis for establishing a defendant's knowledge of the unlawful aims and objectives of a conspiracy, although it is not a permissible basis for establishing knowing participation in such a conspiracy:

> There are two aspects of knowledge involved in a conspiracy: (1) knowing participation or membership in the scheme charged and (2) some knowledge of the unlawful aims and objectives of the scheme. Conscious avoidance may not be used to support a finding as to the former, i.e., intent to participate in a conspiracy, but it may be used to support a finding with respect to the latter, i.e., knowledge of the conspiracy's unlawful goals.

*United States v. Ferrarini*, 219 F.3d 145, 154–55 (2d Cir.2000) (internal citation and quotation marks omitted); *see also United States v. Scotti*, 47 F.3d 1237, 1243 (2d Cir.1995) ("The reason that we do not permit conscious avoidance instructions on the issue of knowing participation in a conspiracy is that it is logically impossible for a defendant to intend and agree to join a conspiracy if he does not know it exists.").

Because Taveras allocuted under a conscious avoidance theory, he necessarily did not admit that he entered into a conspiratorial agreement with others with actual knowledge of its illegal objectives. However, he did admit that he entered into an agreement with others; with an understanding that there was a probability that the agreement had unlawful objectives, which Taveras purposely avoided confirming; and nevertheless continued to participate in and promote the scheme. This is a sufficient factual basis for a plea to a conspiracy charge and, indeed, is consistent with this Court's instructions to the jury at the trial of Taveras's co-defendants:

> If the government proves beyond a reasonable doubt that the conspiracy existed and that the defendant became a member of the conspiracy, then the government may prove that the defendant acted with knowledge of the illegal objectives of the conspiracy by showing that he deliberately closed his eyes to what would otherwise have been obvious to him.

*United States v. Cohn*, S1 99 Cr. 807 (Tr. 2019–20).

Therefore, Taveras's plea is supported by a sufficient factual basis under Rule 11(f), and vacating of the October 26 Order is not warranted on this ground. *See* Fed. R.Crim.P. 11(f).[6]

**B. Withdrawal Of The Plea Will Be Permitted To Avoid The Serious Constitutional Questions Otherwise Presented**

Taveras contends that this Court's October 26, 2000 order accepting his guilty plea cannot stand under Article III of the United States Constitution, the Fifth and Sixth Amendments, and Federal Rule of Criminal Procedure 11. The basis for this argument is that, prior to that order, on October 18, 2000, Taveras had notified this Court that he "no longer wishe[d] to plead guilty." Thus, Taveras contends, he had already withdrawn his plea before this Court accepted it, so that by the time of this Court's order there was no voluntary and knowing waiver of Taveras's Sixth Amendment right to trial by jury and the

---

6. In a footnote, Taveras notes that the unlawful agreement would have had to be between Taveras and a co-conspirator, not between Taveras and Barrett, since Barrett was a government agent. Taveras's allocution satisfied this rule. Taveras referred to "two other individuals" who were part of the agreement, only one of whom was Barrett, and described one of his co-conspirators as a "lawyer," obviously a reference to Cohn. *See United States v. Contractor*, 926 F.2d 128, 133 (2d Cir.1991) (defendant's reference to co-conspirators as "they" did not render allocution insufficient with respect to unlawful agreement element).

Fifth Amendment right against self-incrimination. In short, according to Taveras, there was no guilty plea to accept. Thus, he need not provide a "fair and just reason" for withdrawal of his plea under Rule 32(e) because this Court's October 26 Order was invalid.

The Federal Magistrates Act enumerates a number of specific judicial duties which may be conducted by magistrate judges, and permits district judges to assign "such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 663(b)(3). In *United States v. Williams*, 23 F.3d 629 (2d Cir.1994), the Second Circuit upheld the practice of district court referrals of Rule 11 allocutions to magistrate judges as an "additional duty" consistent with the statute and Article III, so long as the defendant consents. See *id.* at 634 ("A defendant's consent ... is the crucial difference in the constitutional analysis, because a defendant may waive even his most basic rights."). In rejecting the argument that, even with the defendant's consent, this practice violates Article III, the *Williams* court stated:

> Because the district court remains in control of the proceeding, and the matter is reported to that court for its approval, there should be no concern that the use of a magistrate judge to allocute a defendant accused of a felony will tend to devitalize Article III courts.

*Id.*

Taveras contends that, under this precedent, his allocution before Judge Maas did not constitute the entry of a valid guilty plea. Rather, his plea was open until the moment it was formally accepted by this Court—except that, prior to that moment, he had already made known his decision not to plead guilty after all. Taveras points out that, under *Williams*, the district court's retention of "control" over the proceeding is critical, and, indeed, a district judge may determine upon review that a defendant's allocution was insufficient even where the magistrate judge

found it satisfactory. *See* 23 F.3d at 634 ("A district judge may readily read the transcript of the allocution for infirmities, if any, and may readminister the allocution if it is thought necessary."); *see also* Fed. R.Crim.P. 11(f) (district court may make further inquiry). It is also noted that the "Consent To Proceed Before A United States Magistrate Judge On A Felony Plea Allocution," executed by Taveras, states that the defendant's plea is "subject to review and approval by the District Judge assigned or to be assigned to my case."

The government objects that what *Williams* contemplates is that the district court retain "control" over the proceeding by reviewing a closed set of facts which occurred at a time in the past, *i.e.*, when the defendant appeared before the magistrate judge. The government points out that the review by the district court discussed in *Williams* is, precisely, review of "the transcript of the allocution for infirmities, if any." 23 F.3d at 634. Thus, according to the government, Taveras's plea was not open at the time this Court accepted it—nor, indeed, at the time of Taveras's October 18, 2000 letter. Rather, the only requirement remaining to satisfy the structural guarantees of Article III was that retrospective review by a district judge be available to determine whether, at the time the defendant allocuted before the magistrate judge, his plea was knowing, voluntary, and supported in fact.

In further support of this argument, the government points to the Tenth Circuit's decision in *United States v. Ciapponi*, 77 F.3d 1247 (10th Cir.1996), and an unpublished decision by the Second Circuit, *United States v. Medina*, 1999 WL 385778 (2d Cir. June 1, 1999). In *Ciapponi*, the defendant challenged the practice of referring the taking of pleas to magistrates— the issue in *Williams*—and also argued that his plea was invalid due to the lack of a formal acceptance by the district court. *See Ciapponi*, 77 F.3d at 1249–51. In *Medina*, the defendant maintained that his plea was invalid due to the lack of a formal

acceptance of his plea. *See* 1999 WL 385778, at *1.

In *Ciapponi,* the Tenth Circuit held that Article III does not require "that a referral be conditioned on subsequent review by the district judge, so long as a defendant's right to demand an Article III judge is preserved," and that the Federal Rules of Criminal Procedure preserve that right "by providing for review of a plea proceeding, as a matter of right, through a motion to withdraw a guilty plea prior to sentencing." 77 F.3d at 1252. Thus, the government contends, *Ciapponi,* like *Williams,* supports the view that the district court's role is confined to a retrospective review of a closed set of facts adduced at the proceedings before the magistrate. As for *Medina,* the government points out that this decision held that "matters of reality, and not mere ritual, should be controlling," so that lack of a formal acceptance by the district court did not render the plea invalid. *See* 1999 WL 385778, at *1.

This court may not rely upon *Medina* because that was an unpublished disposition. *See* 2d Cir. R. 0.23. Moreover, although the government's argument does find support in *Ciapponi* and *Medina,* both of those cases arose in a different factual and procedural posture than did the instant case. In each of those cases, although the district judge had not issued a formal order approving the plea, the Court of Appeals found as a factual matter that the district judge had reviewed the plea and found it satisfactory, and that the defendant had proceeded to sentencing only to challenge the taking of the plea by the magistrate for the first time on appeal. *See Ciapponi,* 77 F.3d at 1251; *Medina,* 1999 WL 385778, at *1.

The sequence of events in *Williams* was actually more similar to the way they unfolded here. Based on the Second Circuit's discussion, it appears that the defendant's effort to withdraw his plea, and the district court's pronouncement that the plea was adequate, were effectively simultaneous. *See* 23 F.3d at 631 (after learning that Williams' associate was government informant, "[Williams'] counsel made an oral motion pursuant to [former] Fed. R.Crim.P. 32(d) to withdraw Williams' guilty plea .... At that time the district judge stated that there was no basis for the application, and continued: '[t]he allocution is clear and unmistakable. He admits his guilt.' Nonetheless, the district court agreed to entertain a written motion, which it [later] denied.").[7] However, the focus of the defendant's challenge in *Williams* was on the practice of referring the taking of felony pleas to magistrates, and Williams never questioned that the federal rule governing the withdrawal of pleas applied. *See* 23 F.3d at 632–34. The issue of whether a plea taken by a magistrate is open until being accepted by a district judge—or, in a sense, subject to unilateral withdrawal by the defendant—including the issues of timing alluded to above, was not addressed. *See Williams,* 23 F.3d 629; *see also Ciapponi,* 77 F.3d at 1251 ("Defendant raises one point beyond those addressed in *Williams* .... [D]efendant complains that the district judge did not conduct a review of the plea proceeding.").

Finally, the government looks to the Supreme Court's decision in *Peretz v. United States,* 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). *Peretz* held that a magistrate judge's conduct of voir dire in a felony trial, with the defendant's consent, did not violate the Federal Magistrates Act or Article III, and stated that de novo review by the district court "need not be exercised unless requested by the parties." *Id.* at 939, 111 S.Ct. 2661 (internal citation and quotation marks omitted). However, while *Peretz* arguably provides support for the government's position, it is far from conclusive given that different procedures

---

**7.** Current Rule 32(e) was formerly Rule 32(d). *See* Fed.R.Crim.P. 32 Advisory Committee Notes.

and different constitutional rights of the defendant are involved.

Taveras maintains that, if this Court does not determine that Article III requires the October 26 Order to be vacated, permitting him to withdraw his plea under Rule 32(e) is appropriate to avoid the serious constitutional questions that would otherwise be presented.

■ Under the doctrine of constitutional avoidance, a court should "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez v. United States,* 490 U.S. 858, 864, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). The instant case does present serious constitutional questions in a factual context which has not yet been addressed in this circuit, and which the other authorities relied upon by the government do not resolve either.[8]

As explained previously, the factors relevant to a Rule 32(e) motion include whether there is an assertion of legal innocence, the passage of time, prejudice to the government, and the reasons offered in support of the motion. Taveras does not assert his legal innocence. As for the passage of time, he has made his motion well before sentencing and, indeed, before the Probation Office had initiated a presentence investigation, which weighs in his favor. On the other hand, he made the motion two months after he pled and, more significantly, after his co-defendants had gone to trial and been acquitted.

The Second Circuit has held that it is not an abuse of discretion for a district court to deny a motion to withdraw a plea where the reason for the motion is that the defendant's alleged co-conspirators were acquitted. *See United States v. O'Hara,* 960 F.2d 11, 14 (2d Cir.1992). Of course, Taveras does not cite these acquittals as the basis for his motion. Nonetheless, the timing undoubtedly raises questions about Taveras's motivations.

With respect to prejudice, the government has already tried this case against Taveras's co-defendants in a trial lasting 18 days. A trial of Taveras alone is likely to be less lengthy than was the previous trial. Nonetheless, allowing Taveras to withdraw his plea does involve prejudice to the government, in that it will be forced to conduct a repeat trial if it wishes to prosecute him. Finally, the reason offered in support of withdrawal is constitutional avoidance. Although the government maintains otherwise, there are serious constitutional questions presented. This weighs strongly in favor of Taveras.

Given the seriousness of the constitutional questions presented, and considering the other relevant factors in their totality, permitting withdrawal of Taveras's plea under Rule 32(e) is warranted.

### Conclusion

Therefore, for the reasons set forth above, the motion to withdraw the plea is granted.

It is so ordered.

---

**8.** The government has also provided this Court with a copy of its brief in a case currently pending before the Second Circuit, *United States v. Clark,* No. 11–1206, in which the defendant challenges his guilty plea, taken by a magistrate judge, based on the lack of a formal acceptance by the district court. Whether—and how—the *Clark* decision will resolve the question presented here cannot be known. Indeed, in *Clark,* as in *Ciapponi,* the defendant's Article III challenge appears to have been raised for the first time on appeal. *See* Gov. Br. in *United States v. Clark* at 12–13.