UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4573**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

QUENELL WALTERS,

Defendant - Appellant.

**No. 07-4600**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

P. W. FERGUSON, a/k/a P. W., a/k/a Patrick William Ferguson,

Defendant - Appellant.

Appeals from the United States District Court for the District of South Carolina, at Columbia. Joseph F. Anderson, Jr., Chief District Judge. (3:06-cr-00061-JFA-20; 3:06-cr-00061-JFA-6)

Argued: September 25, 2009      Decided: October 29, 2009

Before NIEMEYER, MICHAEL, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** David Bruce Betts, Columbia, South Carolina; James Arthur Brown, LAW OFFICES OF JIM BROWN, PA, Beaufort, South Carolina, for Appellants. Jimmie Ewing, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** James H. Babb, HOWLE & BABB, LLP, Sumter, South Carolina, for Appellant Quenell Walters. W. Walter Wilkins, United States Attorney, Columbia, South Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Quenell Walters and P.W. Ferguson appeal their convictions for (1) conspiring to possess with intent to distribute and distribute cocaine base and (2) possessing with intent to distribute and distributing cocaine base. Ferguson also appeals his mandatory life sentence. Finding no error, we affirm.

## I.

From 2000 until 2005 the Columbia, South Carolina, Police Department and the FBI ran a joint investigation of drug activities in the McDuffie Street neighborhood of Columbia. Drug dealing in the neighborhood was tightly controlled. Only members of the Bloods street gang or persons who lived or grew up in the neighborhood could sell drugs there. Any outsider who attempted to sell drugs in the area was beaten.

Walters was a member of the Bloods gang. Over a two-month period Nickolas Guild sold at least one hundred grams of crack to Walters on a street adjoining McDuffie. Walters resold this crack. Ferguson lived in Loretta Brown's house on McDuffie Street. Brown's house was used as a central gathering spot and safe haven for drug traffickers. Jerblonski Addison sold crack to Ferguson on a daily basis over a couple of years; these sales totaled at least fifty grams. Guild sold at least 50 grams of crack to Ferguson, and Guild saw Ferguson sell crack on McDuffie

3

Street on a daily basis.  Debra Brown, an informant, videotaped both Walters and Ferguson participating in a crack transaction on McDuffie Street.

Walters and Ferguson were charged in two counts of a twenty-eight count indictment returned against twenty-one individuals by a federal grand jury on January 17, 2006.  Count 1 charged both defendants with conspiring to possess with intent to distribute and distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846.  Counts 16 and 22 charged Ferguson and Walters, respectively, with possessing with intent to distribute and distributing a quantity of cocaine base, and in aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2.

The other nineteen co-conspirators charged in the indictment pled guilty.  Walters and Ferguson were tried together, and on February 15, 2007, the jury found them guilty of the counts charged.  The district court sentenced Walters to a mandatory minimum prison term of 240 months and sentenced Ferguson to a mandatory term of life in prison.

Walters and Ferguson appeal their convictions, and Ferguson appeals his life sentence.

4

II.

A.

Walters argues that admitting evidence of his membership in the Bloods street gang violated his First Amendment right of assembly. Both defendants argue that allowing testimony about the Bloods street gang was irrelevant and resulted in unfair prejudice. We review the admission of this evidence for abuse of discretion. United States v. Perkins, 470 F.3d 150, 155 (4th Cir. 2006).

The district court did not abuse its discretion in allowing evidence of Walters' gang association. The First Amendment does not bar evidence of a person's associations when it provides a link to criminal activity. "Assessing the probative value of common membership in any particular group, and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." United States v. Abel, 469 U.S. 45, 54 (1984). The evidence of Walters' membership in the Bloods gang was relevant to the conspiracy charge because the gang controlled the drug activity in the McDuffie Street area. Those who were not Bloods were not allowed to sell drugs in the area unless they grew up there or lived there. The district court did not abuse its discretion in deciding that the probative value of evidence about Walters' membership in the gang and the gang's

5

power of exclusion was not substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403.

                                   B.

The defendants next challenge the district court's refusal to allow them to introduce evidence that no cooperating government witness took or was required to take a polygraph. According to the defendants, this ruling violated their constitutional rights to confront adverse witnesses, to effective assistance of counsel, and to due process of law.

In this circuit the results of a polygraph are not admissible to impeach the credibility of a witness. United States v. Sanchez, 118 F.3d 192, 197 (4th Cir. 1997). If the results of a polygraph examination cannot be used to impeach a witness, it follows that the absence of a polygraph cannot be used for impeachment either. It was not an abuse of discretion for the district court to disallow evidence that no cooperating witness took a polygraph test.

                                   C.

The defendants requested a verdict form (or jury interrogatories) that would have required the jury to make a specific drug quantity determination as to the overall conspiracy and as to each defendant. The district court denied these requests. Instead, the court -- with respect to the overall conspiracy and each defendant -- submitted

6

interrogatories that allowed the jury to find drug quantity ranges corresponding to the penalties prescribed in 21 U.S.C. § 841(b).

The defendants argue that the interrogatories violated their Sixth Amendment right to a jury trial. Citing Apprendi v. New Jersey, 530 U.S. 466 (2000), the defendants argue that the jury should have been permitted to determine specific drug quantities rather than the ranges specified in the interrogatories. "We review allegations of a constitutionally defective jury instruction de novo." United States v. Stitt, 250 F.3d 878, 888 (4th Cir. 2001). This attack on the interrogatories has no merit. There is no authority for requiring the jury to find the exact quantifies of drugs involved. The drug quantity ranges listed in the interrogatories properly reflected the same ranges listed in 21 U.S.C. § 841(b).

D.

Next, the defendants challenge the district court's jury instruction on the conspiracy charge. Because this argument was not raised at trial, our review is for plain error. United States v. Reid, 523 F.3d 310, 315 (4th Cir. 2008).

The defendants contest the district court's instruction that if the jury found both defendants guilty of the conspiracy charge, then the quantity of cocaine it found

7

attributable to the conspiracy for each defendant had to "match up, because we are talking about the same conspiracy." J.A. 746. First, the defendants argue that this served to direct a verdict on whether the evidence proved a single conspiracy or multiple conspiracies. This argument fails because there was no evidence that either defendant's actions related to a conspiracy separate from the McDuffie Street conspiracy. A multiple conspiracy instruction is not required if there is no proof of multiple conspiracies. See United States v. Nunez, 432 F.3d 573, 578 (4th Cir. 2005). Second, the defendants argue that the instruction prevented the jury from making an independent determination of the weight of drugs attributable to each defendant as a member of the conspiracy. See United States v. Collins, 415 F.3d 304 (4th Cir. 2005). We disagree. The district court complied with circuit law in instructing the jury. The court instructed the jury that it needed to determine (1) whether "the government has proved beyond a reasonable doubt that the defendant participated in a conspiracy," (2) "the amount of cocaine base that the government has proved beyond a reasonable doubt is attributable to the entire conspiracy," and (3) "the amount of cocaine base that the government proved beyond a reasonable doubt is attributable to each defendant found to be a member of the conspiracy himself as an individual

8

member of the conspiracy." J.A. 731-32. The conspiracy instruction, taken as a whole, was not erroneous.

E.

Walters claims a Brady and Giglio violation because the district court refused to require the government to disclose FBI agent Rodney Crawford's notes of his interrogation of Walters. See Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972). The 302 report prepared by Agent Crawford reflected that Walters admitted his membership in the Bloods gang, and Agent Crawford testified to that effect. Walters -- through an oral statement made by his counsel -- denied that he had made such an admission to Agent Crawford. Walters did not offer a sworn denial, nor did he ask the district court to conduct any in-camera review of Agent Crawford's notes. In any case, Walters argues that the notes should have been made available for impeachment purposes.

To succeed on a Brady claim, the defendant must show "that prejudice resulted from the suppression." Vinson v. True, 436 F.3d 412, 420 (4th Cir. 2006). Here, even if it is assumed that the interview notes should have been produced, Walters has not shown prejudice. Both Danny Sims and Nickolas Guild testified that Walters was a member of the Bloods gang. Thus, Agent Crawford's testimony that Walters admitted to his membership in the Bloods gang was cumulative evidence. The

9

district court's refusal to require the government to turn over Agent Crawford's notes of his interrogation of Walters therefore did not result in any prejudicial error under Brady and Giglio.

F.

Finally, Ferguson argues that his trial counsel was ineffective for failing to contest the mandatory life sentence imposed by the district court. The court was required to sentence Ferguson to a life term if he violated 21 U.S.C. § 841(b)(1)(A) after having two or more prior felony drug convictions that had become final.

An ineffective assistance of counsel claim is not cognizable on direct appeal "unless it conclusively appears from the record that defense counsel did not provide effective representation." United States v. Benton, 523 F.3d 424, 435 (4th Cir. 2008).

Ferguson argues that his trial counsel was ineffective for: (1) failing to object to the life sentence enhancement or to request an enhancement hearing; (2) failing to challenge the district court's consideration of an uncounseled prior conviction; (3) failing to argue that Ferguson did not enter into the § 841 conspiracy after his prior felony drug convictions became final; and (4) failing to request a jury determination of the dates of Ferguson's participation in the § 841 conspiracy.

10

Ferguson admits that his 1998 felony drug conviction was properly considered as a predicate offense. He claims, however, that his 1999 drug conviction was invalid because he was not represented by counsel and that his 2002 and 2004 drug convictions occurred after he was no longer participating in the § 841 conspiracy. Thus, he claims that his trial counsel was ineffective for not challenging the use of these convictions for enhancement purposes. Two prior felony drug convictions meant a mandatory life sentence for Ferguson. Because he admits to one prior conviction, all of his other convictions would have to have been invalidated as sentence enhancers for his counsel to have succeeded in challenging the mandatory life sentence. Therefore, if just one of the other convictions was valid, Ferguson's counsel would not have been ineffective for failing to challenge the enhancement.

With respect to the 1999 conviction, Ferguson points out that his presentence report (PSR) does not reflect that he had counsel. The PSR simply quotes a South Carolina statute stating that indigent defendants are entitled to counsel. Thus, while we do not know whether Ferguson actually had counsel, we have no basis to determine that this conviction was definitively invalid for enhancement purposes due to lack of counsel. As a result, the record does not conclusively show that Ferguson's counsel in this case rendered ineffective assistance in failing

11

to challenge the use of his 1999 conviction. In light of the 1998 conviction and the absence of a showing that the 1999 conviction cannot be counted to enhance Ferguson's sentence, we cannot say that "it conclusively appears from the record that defense counsel did not provide [Ferguson] effective representation" in failing to challenge the predicate convictions for the § 841 enhancement. Benton, 523 F.3d at 435. Ferguson's ineffective assistance claim must therefore be rejected in this direct appeal.

## III.

For the foregoing reasons, Walters' and Ferguson's convictions and Ferguson's sentence are

AFFIRMED.

12